## WELLES *against* COWLES.

THIS was an action of *assumpsit,* to recover the dividends, for a certain period, on twenty-five shares of the capital stock of the *Talcott Mountain Turnpike Company.*

The cause was tried at *Hartford, September* term, 1817, before *Edmond, Smith* and *Baldwin,* Js.

The *Talcott Mountain Turnpike Company* was incorporated, by the legislature, in *May,* 1798. That part of the act, which constituted the petitioners a corporation, was in these

Shares of a turnpike company, are real estate, notwithstanding the right of taking toll is limited, by their grant, to the reimbursement of expenses and interest ; and are not subject to testamentary disposition, by a testator not qualified to devise real estate.

words : " Resolved by this Assembly, that *George Humphreys* and his associates, together with such persons as shall hereafter associate, with their successors, heirs and assigns, be, and they are hereby constituted a corporation, by the name of the *Talcott Mountain Turnpike Company,* for establishing and keeping in repair a turnpike road," &c.   The act then authorized the company, when they should have made the road, and put it in complete repair, to erect two gates, and collect toll of travellers, according to a tariff prescribed. In a subsequent part of the act, was this provision : " And whensoever, and as soon as, the aforesaid toll shall reimburse to the said company, their successors, heirs and assigns, the sums by them advanced for making said road, and keeping the same in repair, together with an interest of twelve *per cent. per annum,* the said road shall be, and remain, discharged, free from said toll."

*Sarah Norton,* before and at the time of her decease, on the 17th of *January,* 1815, was the owner of twenty-five shares of the stock of this company.   She left two sisters, *Fanny Welles,* wife of the plaintiff, and *Julia Norton,* who were her only heirs at law.   On the 13th of *January,* 1815, *Sarah Norton,* being over the age of seventeen years, but under the age of twenty-one, made and published her last will and testament, by which she gave sundry legacies to her sisters, and other persons, and then made her cousin *Thomas Mather,* her residuary legatee, as follows : " *Item,* I give, devise and bequeath to my cousin, *Thomas Mather,* all my personal estate, and all my other estate, which I may possess, that I can by will dispose of, that may be left, after paying my debts, and the aforementioned legacies."   She appointed *Horace Cowles,* the defendant, and *William Mather,* her executors, who accepted the trust.   On the 9th of *February* 1816, *Julia Norton* died, leaving Mrs. *Welles* her sole heir. The defendant, in his capacity of executor, received the dividends on said twenty-five shares, which accrued after *Sarah Norton's* death, as part of her personal property. The only question was, whether these shares, and the dividends thereon, were personal property, and could by law be disposed of, by the testatrix, in her will.   The court instructed the jury, that they were not personal, but real estate, which the testatrix was incompetent to dispose of, by will ; and directed them to return a verdict for the plaintiff.   This

being done, the defendant moved for a new trial, on the ground of a misdirection ; and the court reserved the motion.

The case was argued, at the last *November* term of this Court, by *Pitkin* and *Edwards,* in support of the motion, and by *T. S. Williams,* and *Cowls,* contra. After considerable discussion among the Judges, some of whom had not formed a decided opinion, they continued it *to advise.*

In support of the motion, it was contended, 1. That this property wanted that *permanency,* which is essential to constitute it real estate. By the express terms of the grant, the toll is to cease as soon as the expenses of the company are reimbursed, with twelve *per cent.* interest. This reimbursement may be accomplished in a few years ; and if facts of general notoriety, with regard to the amount of travel on this road, can be taken notice of, it undoubtedly will be. This is clearly not a " *perpetual* inheritance."

2. That it does not partake of the realty. The state itself had no interest in the soil, and could not grant any ; nor does the act of incorporation purport to grant any. The company, of course, acquired none. It is an observation, which has the force of a maxim, that the nature of the thing may be properly illustrated from the remedy the law gives for it. But it is clear, that this company can maintain no real action in respect of the road. So far as regards the nature of the estate, this highway is like every other highway. In ordinary cases, the inhabitants of the district through which a road runs, are compelled by law to make it, and keep it in repair ; the fee of the land remains in the original proprietors ; and the right of passage is unrestricted. Here, the legislature have contracted with certain individuals, to make the road and keep it in repair, and have constituted them a body politic for that purpose ; the fee of the land remains, precisely as in other cases, in the original proprietors ; and the right of passage is subject to a small assessment, the avails of which go to reimburse the makers of the road. It can obviously make no difference in the nature of the thing, whether a surveyor of highways builds or repairs a road, and is reimbursed from the proceeds of a tax upon the inhabitants of the district, or whether it is done by an authorized association of individuals, who are reimbursed

*Hartford,*
*June, 1818.*

Welles
*v.*
Cowles.

from the proceeds of an assessment upon travellers. The *right* in both cases is the same, or strictly analogous, *viz.* That of compelling contributions from the persons legally liable, for the purpose of reimbursing expenses. The right in question would seem to savour less of the realty, than an annuity in fee, granted by the king, out of the *Barbadoes* duties, which were paid in respect of the tenure and produce of land ; and yet such an annuity was held to be a personal inheritance, not within the statute of *Frauds.* Earl of *Stafford* v. *Bulkley,* 2 *Ves.* 170. 178. It has also been held, that an annuity charged upon the post-office, until a certain sum to be laid out in land should be raised, was a mere personal annuity. Lady *Holdernesse* v. Marquis of *Carmarthen & al.* 1 *Bro. Ch. Ca.* 377.

3. Admitting that the estate owned by the company, in its corporate capacity, was real estate ; yet the interest of *Sarah Norton,* an individual stockholder, was only a right to receive a certain proportion of such dividends as should be declared. This right had no concern with the realty ; her only claim was upon the company ; and that was strictly personal.

It was insisted, contra, that the turnpike stock in question was an incorporeal hereditament and real estate.

1. It is comprised within the established *definitions* of real estate. " Things *real,*" as contra-distinguished from things *personal,* are said, by *Blackstone,* to be " permanent, fixed and immoveable ;" and " things personal," on the other hand, to be " goods, money, and all other moveables, which may attend the owner's person." 2 *Black. Comm.* 16. The same writer defines " an incorporeal hereditament" to be " a right issuing out of a thing corporate, or concerning, or annexed to, or exerciseable within, the same." 2 *Black. Comm.* 20. *Blackstone's* authority is *Co. Litt.* 19. *b.* 20. *a.* which fully supports him. *Cruise* says, " real property consists of land," (in the most comprehensive sense of that term,) " and of all rights and profits arising from, or annexed to, land, which are of a permanent and immovable nature." 1 *Cruise's Dig.* 1, 2. Lord *Coke* makes all incorporeal hereditaments savour of the realty, which concern land, or *certain places*—*i. e.* are exercisable within assignable local limits. *Co. Litt.* 20. *b.* Now the right of taking tolls on this road, which is the property in question, is a right issu-

ing out of land; it concerns land; it is exercisable within certain local limits; and it is, in the sense required, permanent. The law considers an estate as permanent, which may endure forever, though it may be defeated, pursuant to a provision in the grant, within a short time. The estate of a mortgagee is liable to be defeated, even at law, by payment of the money, when it becomes due; but will it be contended, that this estate wants the permanency requisite to make it *real* estate?

2. This property is real estate, according to the decisions in analogous cases. In *Buckeridge* v. *Ingram*, 2 *Ves.* jun. 652. it was decided, that shares in the navigation of the river *Avon,* were real estate, which could not pass by will, without three witnesses; and that the widow of the testator was entitled to dower in them. The nature of that property, as appears from the master's report, is not distinguishable from our turnpike stock. It has also been decided, that *New-River* stock, is real estate, on a question, whether the wife can be barred of her interest in it, without a fine. *Drybutter* v. *Bartholomew*, 2 *P. Wms.* 127. In *The King* v. The inhabitants of *Chipping-Norton,* 5 *East* 239. 242. Lord *Ellenborough* expressed an opinion, that the tolls of a market for the sale of cattle, constituted an incorporeal tenement, according to *Co. Litt.* 19. *b.* 20. *a.* and *Webb's* case, 8 *Rep.* 46. *b.* In *Roberts on Frauds,* *p.* 126. it is said, that the statute of *Frauds,* is confined to *real estate;* and in the same book, *p.* 127. it is said, that it extends to shares in the *New-River,* and to all tolls. The grant to the *New-River Company,* authorizes them to dig a trench, and maintain it, through the grounds of individuals, on paying them the damage, for the purpose of bringing water into the city of *London,* but expressly provides, that the inheritance of the trench shall remain in the original owners. 2 *Cay's Stat.* 551. [3 *Jac.* 1. *c.* 18. *s.* 1.] This makes the interest of the stockholders and that of the owners of the land, the same as the corresponding persons have, in the stock and soil of our turnpike roads.

3. These shares are made real estate, by the act of incorporation. A distinguishing feature of real estate, is, that it goes to *heirs,* and not to executors. The legislature have expressly made this stock descendible to *heirs.* They have

thereby treated it as real estate, and manifested their intention that it should be such.

4. The general practice of our sister states, and the frequent practice of this state, of expressly providing, in their grants, to turnpike and toll-bridge companies, that the stock shall be considered *personal* estate,(*a*) affords an inference, that without such provision, it would *not* be personal estate.

In reply, it was remarked, that the word " heirs" can have no application to a corporation ; it can mean nothing more than " successors ;" and is mere surplusage.

SWIFT, Ch. J.   Though the public do not own the right of soil in highways, yet they have the right to pass and repass, and to do every act necessary to make and repair the roads.   This right, though of an incorporeal kind, is real property.   When the legislature incorporated the turnpike company in question, they authorised and empowered them to make and maintain the road, to erect gates thereon, and collect a certain toll, till the expense of making and repairing the road should be reimbursed to the stockholders, with twelve *per cent.* interest.   This is a right, issuing out of real property, annexed to, and exerciseable within it ; and comes within the description of an incorporeal hereditament of a real nature, on the same principle as a share in the *New River,* in canal navigations, and tolls of fairs and markets. *Drybutter* v. *Bartholomew,* 2 *P. Wms.* 127.   *Habergham* v. *Vincent,* 2 *Ves.* jun. 232.   *The King* v. The inhabitants of *Chipping-Norton,* 5 *East* 239.   This is not a mere right of action in favour of the company to collect a toll from individuals passing the road ; but they can, by erecting the

(*a*) For instances of such provisions in grants made by the legislature of *Connecticut,* see the acts of incorporation of *The Chatham and Marlborough Turnpike Co.*   State Rec. Oct. 1809. p. 43.   *The East-Haddam and Colchester Turnpike Co.*   Id. Oct. 1809. p. 47.   *The Durham and East-Guilford Turnpike Co.*   Id. May 1811. p. 101.   *The Southington and Waterbury Turnpike Co.*   Id. Oct. 1812. p. 38.   *The Farmington and Harwinton Turnpike Co.*   Id. Oct. 1812. p. 40.   *The Middletown, Durham and New-Haven Turnpike Co.*   Id. Oct. 1813. p. 33.   *The Middletown and Meriden Turnpike Co.*   Id. Oct. 1809. p. 35.   *The Little Falls Toll Bridge Co.*   Id. May 1803. p. 60.   *Hawley's Bridge Co.*   Id. May 1803. p. 45.   *Warner's Toll Bridge Co.*   Id. May 1803. p. 62.   *The New-Milford Toll Bridge Co.*   Id. May 1803. p. 64.   *The Great Falls Bridge Co.*   Id. May 1807. p. 97. &c.

gates, compel passengers to pay for the privilege of passing the road. This is a power annexed to, and exercisable upon, the turnpike road ; and the toll is paid for passing the road, and, consequently, issues out of it.

It has been urged, that the individual stockholders have only a claim on the company, and not upon the realty, and this must be of a personal nature. But the stockholders, as members of the company, are owners of the turnpike road ; and it is in virtue of this interest, that they have their claims for the dividends, or their respective shares of the toll. It is not a mere claim on the corporation.

It is further insisted, that this right to collect the toll is of a limited duration, that is, till the expenses are reimbursed ; that this must happen at some period ; and the remoteness of it can make no difference ; consequently, this must be a personal right. It is true, when the estate must determine at a certain time, and may determine sooner, it is a chattel interest. But a freehold may be created upon a condition ; and where the condition or limitation is uncertain, depending on a contingency, this uncertainty preserves the freehold : for if the condition remain unbroken, or is not performed, it may last forever, or, at least, for the life of the owner. Here, the grant to the turnpike company is conditional, or more properly speaking, limited ; depending on a contingency, the reimbursement of the expenses of the road. If this should never take place, and there is a possibility it may not, then the estate will endure forever ; but the mere possibility that the event may happen, on which the estate will be defeated, does not convert it into a chattel personal. 2 *Black. Comm.* 156.

Hosmer, J. The only question necessary to be decided in this case, is, whether turnpike shares are personal estate ? If they are not, the testatrix, by reason of her tender age, was not legally capable to dispose of them by her last will. 1 *Stat. Conn. tit.* 8. *s.* 1.

To simplify the enquiry, it will be useful to remove out of the way some considerations which embarrass the mind in its progress towards a legal result.

Estates held by *statute merchant, statute staple* and *elegit,* are merely chattel interests. They vest in the executors of the deceased, not by reason of their general nature, but

because " being a security and remedy provided for the present debts of the deceased, to which debts the executor is entitled, the law has therefore thus directed their succession ; as judging it reasonable, from a principle of natural equity, that the security and remedy should be vested in those to whom the debts, if recovered, would belong." 2 *Black. Comm.* 162. From this source, therefore, no argument applicable to the present case can be deduced. Neither can any be derived from the fact, that turnpike shares in *England* are deemed chattel interests. They are made such by statute, which limits them to a certain number of years. In the state of *New-York*, the laws authorising turnpikes, expressly constitute the shares personal estate. Under this head, I will only add, that the mode of leving executions, on this species of property, furnishes no aid towards a decision of the principal question. It is expressly prescribed by statute.

Turnpike shares are not embraced within any description of personal property, with which I am acquainted. " Chattels personal are, properly speaking, things *moveable ;* which may be annexed to, or attendant on, the person of the owner, and carried about with him from one part of the world to another." 2 *Black. Comm.* 387. It is equally clear, that turnpike shares are not chattels real. These have the immobility of land, but want a sufficient legal indeterminate duration ; and this want it is that constitutes them chattels. 2 *Black. Comm.* 386. The utmost period for which they can last, is fixed and determinate. But, the estate in a turnpike share is indeterminate, and may last forever. It falls within the reason assigned for considering estates *durante viduitate,* or for any like uncertain time, estates for life, since by possibility they may last so long. *Co. Lit.* 42. 3 *Rep.* 42. A grant of land, at common law, to a man and the heirs of his body, was called a conditional fee. It might endure forever ; though on failure of the heirs specified in the grant, the land would revert to the donor. *Plowd.* 241. If then, turnpike shares are neither chattels real nor personal, what remains but that they are of that species of real estate denominated *tenements ?* " This word includes not only all corporate inheritances, which are or may be holden, but also all inheritances issuing out of any of those inheritances, or concerning, or annexed to, or exercisable within the same, though they

lie not in tenure." *Co. Litt.* 19, 20. " Therefore," says
*Coke,* " they may be entailed. Rents, estovers, or other
profits whatsoever, granted out of land ; or uses, offices, dig-
nities, which concern lands or certain places, may be entailed
within the said statute ; because all these savour of the realty.
But if the grant be of an inheritance merely personal, or to
be exercised about chattels, and is not issuing out of land,
nor concerning any land, or some certain place, such inher-
itances cannot be entailed, because they savour nothing of
the realty." The expression cited, " though they lie not in
tenure," merits attention, to put down a common error, that
nothing can be real estate which is not visible and palpable.
A single instance will sufficiently illustrate this subject. An
*advowson* is an incorporeal hereditament, though it is neither
the object of sight nor touch. It is the right of presentation
to an ecclesiastical living. When the nominee enters, and re-
ceives bodily possession of the lands and tenements of a church,
there is a visible corporeal fruit ; but the estate which the
patron has, is the invisible right of presentation only. The
same observation is applicable to other incorporeal heredita-
ments, and among them to an annuity, " in which a man may
have a real estate." 2 *Black. Comm.* 40. In short, *Wood-
deson, vol.* 2. 57. correctly defines incorporeal hereditaments
" to be such rights and estates, descending, or capable of
descending, in fee simple, or fee tail, of which the essence is
merely ideal, and not the object of our outward senses."

A wife, at common law, is dowable only of lands or tene-
ments, of which her husband was seised at some time during
the coverture. *Co. Litt.* 30. *b.* Yet she may be endowed of
the third part of the profits of stallage ; or of the profits of a
fare ; or of the profits of the office of the *marshalsea ;* or of
the profits of keeping a park ; or of the profit of a dove-
house ; or of a rent in fee. All these instances, and others
of the same nature, which might be enumerated, decisively
show, that tenements, or real estate, exist, not only in the
person who has actual seisin of the land, but in others, who
have a profit or rent derivable from it, or from an office con-
cerning it.

I think it undoubted, that a turnpike share is that species
of real estate denominated a tenement. Over the soil, the
owner of the share has no other interest, than a right to ren-
der it passable, and to receive a compensation. But " rents

*Hartford,*
*June, 1818.*

Welles
*v.*
Cowles.

or any other profits whatsoever, which concern lands, or are peculiarly and certainly local, may be entailed as tenements, because all these, says Sir *Edward Coke,* savour of the realty." 2 *Wooddeson* 71. In *Drybutter* v. *Bartholomew,* 2 *P. Wms.* 127. it was decided, that the husband being seised of a share of the *New-River* water, the wife could not be barred without a fine. *Wooddeson, vol.* 2. 59. referring to this case, makes the following observations : " Thus, also, the several shares or interests in the *New-River* water, are clearly hereditaments, in which a fee simple may be acquired ; and, I apprehend, they are to be ranked with those of the incorporeal kind. For they do not seem to give an absolute or exclusive right or ownership in the water, or in the soil covered with water, to any proprietor, individually, or to all the proprietors, jointly ; but only to a real or freehold interest in the rents and profits resulting from a proprietary share in the undertaking, as regulated by the legislature."

The master of the *Rolls,* in *Buckeridge* v. *Ingram,* 2 *Ves.* jun. 652. decided, that the shares in the river *Avon* navigation, a case essentially similar to the one under discussion, were real estate. That river was rendered navigable by persons authorized by act of parliament. The proprietors had no interest whatever in the soil, except what arose from the right to enter on land, and by digging or other means, to accomplish the general object of the law. The value of the shares arose from the rates and duties collected. After having referred to the doctrine of Lord *Coke,* before recited, the master of the *Rolls* observed, that the act gave a right in and over the soil, and certain real rights arising in and out of the soil. " I have no difficulty" (says he,) " in saying, that wherever a perpetual inheritance is granted, which arises out of lands, or is in any degree connected with, or, as it is emphatically expressed by Lord *Coke, exerciseable* within it, it is that sort of property the law denominates *real.*" *P.* 663, 4.

In the case of the *King* v. The inhabitants of *Chipping-Norton,* 5 *East,* 239. it is said by Lord *Ellenborough,* founding himself upon the authority of Lord *Coke,* in his comment upon the statute of *Westminster* 2d. or on *Webb's* case, 8 *Rep.* 46. *b.* that the receiving the tolls of a fair or market was the taking of a tenement, within the law concerning the settlement of paupers. By the statute of *Frauds* and *Perjuries,*

"no action shall be brought to charge any person upon any contract or sale of lands, tenements or hereditaments," &c. unless the contract is in writing. But all freehold rents, of whatever denomination, are within the operation of this clause, as coming under the word "tenements." *Habergram* v. *Vincent*, 2 *Ves.* jun. 232. *Roberts* on the statute of *Frauds*, 126, 127.

Without pursuing the subject further, I have no hesitation in declaring, that turnpike shares, on principles of common law, cannot be classed with personal estate; but, that they are real estate, and the testatrix, *Sarah Norton*, was incapable of devising them.

The other Judges were of the same opinion.

New trial not to be granted. (*a*)

(*a*) During the pendency of this cause in the supreme court of errors, the General Assembly passed an act, which, after stating in the preamble, that doubts had been entertained, whether shares in banks, turnpike companies, and other incorporated companies, should be disposed of as personal or real estate, provided, that all such shares, thereafter, should be considered, and might be disposed of, as personal estate. 2 *Conn. Stat. May Session*, 1818. c. 10.