Welles and wife *against* Cowles.

Where a dividend was declared on the stock of a turnpike company, being real estate, after the death of the stockholder, of tolls collected before her death, it was held, that such dividend was personal estate, to which the executor, and not the heir, was entitled.

Where damages were assessed, by the county court, in favour of the owner of land, through which a highway had been laid out, in her life-time, payable at a future period, when the road was to be opened, which did not arrive until after her death ; it was held, that such damages, as soon as assessed, became a debt, which belonged to the executor, and did not descend with the land to the heir.

Where a guardian leased, by a parol agreement, the land of his ward, for a year, in consideration of a certain sum to be paid for the use and occupation, and the ward died within the year ; it was held, in an action of *assumpsit,* by the heir, for the rent accrued previously to the death of the ward, that he was not entitled to recover, either on the ground of express contract, because there was no such contract made with him, or on the ground of implied contract for use and occupation, because such implied contract was precluded by the express one, because the tenant did not hold by permission of, or demise from him, and because, during the occupancy in question, he had no estate.

A guardian in this state has an authority only, not coupled with an interest.

This was an action of *assumpsit,* to recover of the defendant certain sums of money, which he had received as executor of *Sarah* and *Julia Norton,* deceased.

The cause was tried at *Hartford, September* term, 1821, before *Hosmer,* Ch. J.

*Sarah Norton* died, on the 16th of *January,* 1815, seised of an estate of inheritance in a shop in *Farmington. Julia Nor-*

ton died on the 19th of *February*, 1816, seised of an estate in fee-simple of 50 shares of stock in the *Greenwoods* turnpike company, then real estate ; of a piece of land called *Poplar Swamp* ; and of a tract, called the *Woodruff farm.* *Fanny Wells*, one of the plaintiffs, was entitled to the shop as heir to *Sarah Norton ;* and to *Poplar swamp*, to *Woodruff farm*, and to the turnpike stock, as heir to *Julia Norton.* The defendant, as executor of *Julia Norton*, had received 37 dollars, 50 cents, being a dividend of one share of the turnpike stock, declared, by the directors of the company, on the 14th of *February*, 1816, of profits accrued to the 1st of *February*, 1816. The defendant had also received 80 dollars, for damages, ordered by the county court of *Hartford* county, held in *August*, 1815, to be paid to *Julia Norton*, for the laying-out of a highway over her property, through *Poplar swamp.* This order was in the following words : " There is established a public highway, to be opened on or before the first *Monday* of *April*, 1816 ; and it is ordered, that the town of *Farmington* pay to *Julia Norton*, (among others) the damages to her occasioned, by the laying-out of said highway, on or before the first *Monday* of *April*, 1816." The defendant had also received 85 dollars, 84 cents, of one *Clark*, for the rent of the *Woodruff farm*, which had accrued from the 1st of *April*, 1815, to the day on which *Julia Norton* died ; and 52 dollars, 50 cents, of *Edward Porter*, for the use of the shop belonging to *Sarah Norton*, from the 1st of *March*, 1814, to the day on which she died.

The plaintiff claimed, that the rents of the *Woodruff farm* and of the shop, were incident to the reversion ; and that he had proved, that *Porter* and *Clark* were tenants from year to year, by virtue of parol leases from the defendant, as guardian to *Sarah* and *Julia Norton ;* and that the leases had not expired at the time of their respective deaths ; that, at least, the rent was not payable until the termination of a year from their respective leases ; *Porter's* lease not terminating until the 1st of *March*, 1815, and *Clark's*, not until the 1st of *April*, 1816 ; and that, consequently, the rent descended to Mrs. *Welles* with the lands. The plaintiffs also claimed, that the dividend of turnpike stock was a part of the stock until the order of dividend was declared, and descended with it to Mrs. *Welles ;* and that the damage assessed for the highway not being payable, and the highway not to be opened, until after

*Welles*
*v.*
*Cowles.*

the death of *Julia Norton,* such damage descended with the land to her heirs.

The defendant claimed, that he had a right to the sums above specified, as executor of *Sarah* and *Julia Norton ;* that he, as their guardian, leased the land and shop. during his guardianship only ; and that, during that time, he was entitled to the rent ; that the dividend of turnpike stock was upon profits, which accrued before the death of *Julia Norton ;* and that the damage assessed for highway was done to her, during her life, although not payable until after her death.

As to the dividend of turnpike stock, the judge instructed the jury, that the declaring of the dividend did not originate the right to the sum distributed, nor change the nature of the property. The profits always were personal estate, pertaining to the holders of the stock ; and the dividend merely conferred a right in severalty of equivalent amount to what was before possessed in common ; and as the sum distributed extended only to a period previous to the death of *Julia Norton,* it is to be considered as personal estate acquired by her, during her life.

As to the money received by the defendant for land taken as a highway, the judge instructed the jury, that by the law of the state, and the correspondent direction of the county court, the sum assessed for the right of passage was a personal obligation on the town of *Farmington,* in favour of *Julia Norton,* and became her undoubted right immediately after the assessment, to be paid at the time specified : that the debt, subject to a suspension as to the time of payment, existed in her life-time, and is due to her executor.

As to the rents, the judge instructed the jury as follows : " In both instances, the rent was received to the period of the death of *Sarah* and *Julia,* and not afterwards ; in both instances, the land was let, by a parol agreement of the defendant, as guardian, and the lease, from the defect of his power, whatever were its terms, would not survive the life of his ward ; and in both instances, the contract was to pay the defendant a stipulated sum of money for the enjoyment of the property. This sum has been paid to the defendant ; and the plaintiff here seeks to recover it out of his hands. So far as he founds his right to the money in the occupancy of the tenants, *Clark* and *Porter,* he necessarily must fail ; as they occupied the property of *Sarah* and *Julia Norton* only, and the occupancy ceased at their deaths. So far as he lays his foundation on

the terms of the contract, he must fail. There was no general reservation of rent, which might enure to the person or persons, whose property was occupied; but it was particular, and specific, and to the defendant by name. The acts of the lessees, in holding from year to year, make not the least difference in the case. They were under an agreement with the guardian; and it was well known by all concerned, that after the death of the Miss *Nortons*, the lessees could not, without the express assent of the heirs, possess the land. The rent became due entirely in the life-time of the Miss *Nortons*; or, at least, did not extend a moment afterwards."

*Hartford,*
*June,*
*1822.*

Welles
*v.*
Cowles.

The judge, therefore, directed the jury, on the questions of law alone, to find their entire verdict for the defendant; which was accordingly done; and the plaintiffs moved for a new trial, on the ground of a misdirection.

*T. S. Williams*, in support of the motion, contended, 1. That the plaintiffs were entitled to a new trial, for a misdirection with respect to the rents. In the first place, the question of fact, whether the leases, by their terms, expired at the death of *Sarah* and *Julia Norton*, ought to have been submitted to the jury. This not having been done, the plaintiffs have now a right to consider them such as they claimed them to be. Secondly, the defendant, as guardian, had power to make the leases claimed to have been made; as the law invested him not with a bare authority only, but also with an interest, which continued during the guardianship, and enabled him to make leases for years, in his own name. *Woodf. L. & T*. 80, 1. 4 *Bac. Abr.* 138. *Gwil.* ed. 1 *Swift's Dig*. 51. Thirdly, leases for years, by the guardian, to continue beyond the time of his guardianship, are not absolutely void, but voidable only. *Woodf. L. & T*. 81. 4 *Bac. Abr.* 139. *Gwil.* ed. In this case, Mrs. *Welles*, the heir, had a right to consider the leases as subsisting, notwithstanding the deaths of the wards. Fourthly, if the leases failed of their proper effect, through defect of power in the guardian, the tenancy will be construed to enure as a tenancy from year to year. *Woodf. L. & T*. 163. *Adams' Eject*. 103—8. *Doe* d. *Martin* v. *Watts*, 7 *Term Rep*. 85. *Doe* d. *Shore* v. *Porter*, 3 *Term Rep*. 16. *Doe* d. *Warner* v. *Browne*, 8 *East*, 167. The leases in question, then, were subsisting leases until the end of the year, in each case; and the heir, to whom the estates had descended, was entitled to the rent. Fifthly, rent is *incident*

*to the reversion ;* and this maxim is applicable to that class of cases where the rent had not accrued at the death of the owner. *Clun's* case, 10 *Co. Rep.* 128, 9. *Bradby* 85. Sixthly, where the reservation of rent is general, it enures to the benefit of the heir, or the person entitled to the reversion. 6 *Bac. Abr.* 20. *Gwil.* ed. *Woodf. L. & T.* 188. In this case, no particular reservation to the lessor is shewn. If there was an implied tenancy from year to year, the law will imply a reservation following the nature of the estate ; and the heir having the right, the law will imply a reservation to him.

2. That the plaintiffs were entitled to the highway assessment. The easement was to commence its existence concurrently with the payment of the money. The county court could not take the land, without rendering an equivalent to the owner ; and their order must be so construed that the equivalent provided shall enure to the owner. The land was taken from the heir ; and what comes in lieu of the land ought to go to the heir. By whom must a writ of error be brought ? By the heir.

3. That the plaintiffs were entitled to the turnpike tolls, undivided at the death of *Julia Norton,* as incident to the stock. Thus, bees in a tree, fish in a pond, deer in a park, which are in themselves personal property, pass with the land. If there be a transfer of turnpike stock ; does not the toll collected, but not divided, pass with the stock to the purchaser ? Suppose *Julia Norton,* the day before her death, had transferred her turnpike stock ; would not the undivided toll have passed with it ?

*Trumbull* and *A. Smith,* contra, contended, 1. That admitting that the leases were, as the plaintiffs claimed them to be, for a year, and that the guardian had power to make such leases ; yet they were determined, by the death of the wards, before the expiration of the term. In *England,* a lease made by a guardian in soccage, a guardian by election, or a testamentary guardian, cannot extend beyond the period of his guardianship. At any rate, this is true of a lease made by a guardian under our laws, who has no interest coupled with his authority. 1 *Swift's Dig.* 50, 1. *Granby* v. *Amherst,* 7 *Mass. Rep.* 1. 6. Secondly, the leases being ended, before the expiration of the term, the tenants were not liable, by virtue of the express contract, to pay rent to any one. 6 *Bac. Abr.* 45. *Gwil.* ed. Thirdly, admitting that rent was due, yet

the promise to pay rent being made to the guardian personally, while he lived, no other person could sue upon it. Fourthly, the plaintiffs could not have recovered the rent from the tenants, in an action on the implied contract for use and occupation; because they occupied the property only while it belonged to *Sarah* and *Julia Norton*; and then not by permission of the plaintiffs.

2. That the turnpike dividend, being of moneys received during the life of *Julia Norton*, was personal estate in her, and therefore belonged to the executor. The only assignable reason for considering these tolls as real estate, is, that the stock itself was real estate. But because that which entitled its owner to receive money, was real estate, it does not follow, that the money, when received, is real estate. The order of dividend did not alter the nature of the property.

3. That the damages assessed for the laying-out of the highway became a *debt*, during the life of *Julia Norton*, subject only to a suspension as to the time of payment. By the statute (*p.* 377. *tit.* 86. *c.* 1. *s.* 11. ed. 1808.) it is provided, that the return of the committee "being approved by the court and recorded, said highway shall be and remain a public highway." The time of opening the road does not determine when the right passed to the public from the owner of the land.

HOSMER, Ch. J. *Julia Norton* was the proprietor of a share of turnpike stock, a dividend on which was declared, by the directors of the turnpike company, a few days after her death, to a period which was nine days before that event. The plaintiff, *Welles*, through his wife, who is heir to the deceased, claims the above product of the turnpike stock; and the defendant interposes his demand, on the ground of his being her executor. The former considers the profits of the stock, to have been real estate; while the latter insists, it is personal. That the shares of a turnpike company, before the act of the General Assembly, passed at their *May* session, 1818, were real estate, was decided, in the case of *Welles* v. *Cowles*, 2 *Conn. Rep.* 567.; but the money received for toll, is personal property. Tolls, when considered as synonymous with shares of a turnpike company, and indicating a right to collect money, are a tenement; (*Co. Litt.* 19. *b.* 20. *The King* v. *The Inhabitants of Bubwith*, 1 *Maule & Selw.* 514.) but when the toll is collected in money, the money is personal estate. It is

*Hartford,*
*June,*
*1822.*

*Welles*
*v.*
*Cowles.*

a moveable, annexed to, and attendant on, the person of the owner.   The nature of property is not changed, by the manner in which the title to it is established; and corn is not the less a personal chattel, because it is derived out of real estate. The profits of the shares were not, as has been erroneously supposed, real estate, until separated from the realty, by the order of dividend.   They ever were personal ; and the dividend did not create the right to them, but merely aparted a common property, by a legal distribution.   *Welles* v. *Cowles,* 2 *Conn. Rep.* 573.   It would hardly be contended, if *Julia Norton* had been the sole proprietor of all the turnpike stock, and a thousand dollars had been collected for toll, and was in the possession of the toll-gatherer, at her death, that her heir, in opposition to her executor, could successfully claim the money.   But, how does the case, hypothetically stated, differ from the one existing before the court ?   In nothing, except that in the former, she would have a right to the whole, and in the latter, to a part.   This difference in the cases, neither affects the nature of the property, nor the title of the owner ; but merely the mode in which that shall be held in severalty, which before was in common.

The highway laid across *Julia Norton's* land, had existence in her life-time, from the moment when the report of the committee was approved, by the court.   *Stat.* 377. *tit.* 86. c. 1. *s.* 11. ed. 1808.   The order on *Farmington,* to pay the damages assesed, immediately became a *debt,* although not payable until a future specified period.   It is not distinguishable from any other judgment for debt ; or from a bond executed by *Farmington,* obliging themselves to pay a sum of money to *Julia Norton,* as a consideration for the right of way.   The time at which the highway was to be *opened,* has no bearing on the point in controversy.   This relates to the actual occupancy of the land ; but the right to occupy having been established by the court, the correspondent consideration was established at the same time, and was payable without reference to the use of the property.   It was not analogous with rent, which successively arrises from actual occupation, but it was the consideration of a sale, through the intervention of the constituted authority.

With respect to the rents paid to the defendant, and claimed by him, as the executor of *Julia Norton,* the plaintiffs, as heir, must shew, that they have title, by an express or an implied contract.   The land, from the use of which they arose,

the defendant, as the guardian of Miss *Norton*, leased, by parol agreement; and the contracts were to pay to him, a stipulated sum of money for the enjoyment of the property. The rent was paid for the use of the land to the death of Miss *Norton*, and no longer; nor was the property occupied, by the tenants, after that event. It is difficult to discern even a plausible ground for the plaintiffs' claim. If the parol leases were made for a year, as the plaintiffs have insisted; then, by the death of the ward, before the expiration of the term, they were determined; and, of consequence, no rent ever became payable. *Granby* v. *Amherst*, 7 *Mass. Rep.* 1—6. And that they were thus determined, I think is clear from this consideration; the guardian having an authority only, uncoupled with an interest. Admitting, however, that he had legal power to make a valid lease for a year; a deficiency of right in the plaintiffs is equally obvious. The tenants expressly contracted with the defendant, solely and exclusively, to pay him for the use and occupation of the land; and the agreement being expressed, forbids all implication. The plaintiffs have advanced the general proposition, that rent is incident to the reversion; and to establish the position, recurrence has been had to the law established, relative to the payment of rents. From this source they derive no aid; as the decisions referred to all proceed on the ground of express reservation in leases, and are nothing more than the construction given to express engagements. The expression that the rent is incident to the reversion, is found in some of the cases; and, in connexion with the other facts in the case, it merely means, that under the contract, construed according to the intendment of the parties, the reversioner is entitled to the rent. For example;—If the reservation of rent be general, without naming any person, the law presumes it to have been the joint intent, that it should be paid to him who advances the consideration. 6 *Com. Dig.* 209. 6 *Bac. Abr.* 20. 2 *Cruise's Dig.* 318. § 44. So, if the reservation be to a man and his heirs and assigns, the heir and remainder-man have right to the rent falling due, after their estates commenced; (6 *Com. Dig.* 209. 2 *Cruise's Dig.* 318. § 44.) and if the reservation be to assigns during the term, the assignee is entitled to the rent, on the expressed intention. 6 *Com. Dig.* 210. 2 *Cruise's Dig.* 319. § 48. *Clun's* case, 10 *Rep.* 127. *b. Sachaverell* v. *Froggatt*, 2 *Saund.* 367. S. C. 1 *Ventr.* 161. But, if the reservation be made to the lessor only, none but the lessor or his executor can reco-

*Hartford
June,
1812.*

*Welles
v.
Cowles.*

ver on the contract. 6 *Com. Dig.* 209. 2 *Cruise's Dig.* 319. § 45. That is precisely the case before the court, the promise having been made to the defendant only. But, determinations are unnecessary to establish the palpable proposition, that on a promise to *A.* a suit cannot be maintained by *B.*

To the money demanded, then, the plaintiffs have no foundation of claim on *express* contract; and their assumed right, on the ground of *implied* contract, is equally indefensible. No implication is admissible; the express engagement to the defendant precluding it. *Expressum facit cessare tacitum.* Besides, an action for use and occupation, will only lie, where the defendant holds by permission of, or by demise from, the plaintiff. *Gregory* v. *Badcock,* 2 *Smith's Rep.* 18. *Esp. Dig.* 20. In addition to this, the plaintiffs had no estate, for the occupancy of which, the money demanded was received by the defendant. It was the estate of *Julia Norton,* and the rents all accrued in her life-time. The heir has no title to rent accruing in the life-time of his ancestor, unless by virtue of express contract. *Co. Litt.* 162. *a. Ognel's* case, 4 *Rep.* 49.

The other Judges were of the same opinion.

New trial not to be granted.