| 35 | 7 |
| 61 | 218 |

THE COMPANY FOR ERECTING AND SUPPORTING A TOLL-BRIDGE FROM NEW HAVEN TO EAST HAVEN *vs.* WALTER OSBORN.

It is the general policy of the law to avoid double taxation, and this consideration is of weight in determining the construction of statutes imposing it; but where their meaning is clear the courts cannot hold such taxation illegal.

A corporation was chartered in 1796 to build and maintain a toll-bridge, with power, "for the purpose of carrying the resolve into effect," to purchase and hold lands not exceeding one hundred acres. The company built the bridge, and soon after purchased a large quantity of mud flats, adjoining the bridge, and erected wharves upon a portion of it, which became of great value and were profitably rented. An act passed in 1847 provided that the real estate of any private corporation, "above what was required and used for the transaction of its appropriate business," should be liable to be assessed and taxed to the same extent as if owned by an individual. Held that the real estate thus used by the company for wharves was liable to taxation under the statute.

Such a use of the real estate which the company was authorized to purchase and hold was not contemplated or authorized by its charter.

·And the question as to what rights the company might have acquired by pre-
scription did not properly arise, inasmuch as the charter, on which the com-
pany itself relied, showed clearly what was its appropriate business, and this
was the sole question in determining the liability of the property to taxation.

The charter provided that the bridge and all property owned by the company
appurtenant thereto, should be considered personal estate and divided into
shares. Held that this provision related to the property of the stockholders as
represented by the shares, and not to the property of the corporation itself in
its relation to other parties, and that the property in question was therefore
taxable as real estate

ASSUMPSIT, brought to the Superior Court in New Haven
county against the defendant, as tax collector, to recover the
amount of certain taxes collected of the plaintiffs upon war-
rants held by him. The facts, which were found by an au-
ditor, were as follows :

The plaintiffs are a. corporation under a charter granted by
the legislature in the year 1796, upon the petition of sundry
inhabitants of East Haven, the principal provisions of which
are as follows :

" *Resolved by this Assembly*, ·That liberty be and the same
is hereby granted to said inhabitants of East Haven to erect
a bridge across from New Haven to said East Haven, at or
near the place called Leavenworth's Ferry, and to collect
from all persons passing over or using said bridge the follow-
ing toll, viz : [here follow the rates of toll], which said toll
may be collected by said inhabitants of East Haven, or their
assigns, and for their own use and benefit, for the term of
seventy years from and after the time fixed in this resolve for
erecting and completing said bridge to the acceptance of the
General Assembly, or a committee to be by them appointed
for that purpose ; and after the expiration of said term of
seventy years no more toll shall be collected than the Gen-
eral Assembly shall then adjudge and determine to be suffi-
cient to keep such bridge in repair and shall be appropriated
to that use. Said inhabitants of said East Haven may assign
over and transfer this grant to such individuals or company
as shall give bonds to the treasurer of this state, in the sum
of twenty thousand dollars, with good and sufficient security
to the acceptance of said treasurer, conditioned that said

bridge shall be erected within the time limited in this grant or resolve ; which said bridge so to be erected shall not be less than twenty-seven feet wide, and as great a proportion as one-half thereof built solid with stone, mud and earth, and shall have a draw in some convenient place in the channel, of at least twenty-six feet wide, to admit the passage of vessels, and shall be completed within the term of two years from the rising of the General Assembly in May, 1797, or on failure thereof this grant shall be made null and void. And be it further resolved, that if there should be an assignment of this grant to any company or individuals, they, with such other persons as shall associate with them, their heirs, successors and assigns, be and are hereby constituted a corporation, by the name of " The Company for erecting and supporting a Toll Bridge from New Haven to East Haven " and said town of East Haven, or any other town, may become associated in said company, and by that name to sue and be sued in all courts of record, and to ordain and establish all such by-laws, ordinances and regulations as shall be necessary to enable them to erect and support sai�’ ːidge and to collect the sums requisite for that purpose from the individual owners or proprietors of shares ; which by-laws, ordinances and regulations shall be subject to be repealed by the Superior Court ; and for the purpose of carrying this resolve into effect said company have liberty and are hereby authorized to purchase and hold lands not exceeding one hundred acres ; and said bridge and all property that shall be vested therein appurtenant thereto and belonging to said company, shall be considered and is hereby declared to be personal estate, and shall be divided into sixty shares, and the owner or owners shall have one vote for each share which he or they shall own in said bridge."

By an act of the legislature passed in the year 1805, the time for the company's using the bridge was extended to one hundred and fifty years from the completion of the same, and by an act passed in the year 1820, the duty of the company to maintain and keep open the draw in the bridge was more particularly defined. All the duties and obligations imposed

upon the company by all of the acts and resolves of the legislature, as well as by the original charter, have been complied with by the company. The toll bridge was built by the company as required by its charter upon ground which had for fifty years or more been occupied by a wharf and by Leavenworth's Ferry so called, the company having derived title to the ground on the 5th day of May, 1797, in part by deed from Michael Todd and others, and in part by deed from the Proprietors of Common and Undivided Lands in the town and county of New Haven. The property thus conveyed consisted of a piece of mud flats, one hundred and fifty feet wide, and extending from Ferry Point, so-called, in New Haven, eastward to the channel of the river separating New Haven from East Haven. Afterwards, on the 4th of June, 1816, the company purchased and now holds another tract of land consisting of similar mud flats twenty rods wide by forty rods long, adjoining and appurtenant to the previous land and the bridge, the title to the same having been conveyed to the company by a deed from a committee of the Proprietors. All of the lands so purchased are in the aggregate much less than one hundred acres, and the same were so purchased and have ever since been held and occupied by the company under. the claim that it was for the purposes mentioned in the charter, and that they had the right to do so. All the lands were low mud flats, covered with water at every tide, of no value, and unproductive until filled in, redeemed and improved by the company, and large sums of money have been expended by them in filling in and raising the flats adjacent to the bridge structure, and in enlarging and extending the wharves and docks thereon at the time of said purchase in 1797, and in building other wharves and docks, and a freight house, toll house, and other structures thereon.

The width of the bridge structure at the west end has been increased since it was first built, so that it is now and has been for many years more than 27 feet wide. Such increased width was rendered necessary in order properly to accommodate the increased public travel over that part of the bridge

to the wharves and docks. The tolls collected for the use of the bridge structure alone are not, and never have been, on an average sufficient to pay the expense of keeping the same in repair and the legal interest on the cost, and the property has only been made remunerative to the owners by reason of the building, using and renting of the wharves and docks. The public access to the wharves and docks is and always has been over a portion of the bridge structure, but other access could be provided without great expense, and in such case the wharves and docks, and the land adjoining the bridge structure owned by the company, would be of great value if entirely separated from and used independently of the bridge structure proper. Some of the wharves and docks extend southerly from the south line of the bridge structure proper at least five hundred feet.

The toll-gate on the bridge, some thirty-eight years or more ago, was removed by the company from the west end of the bridge to a point east of all the wharves and docks, since which time all people have passed free of toll from New Haven to the wharves and docks, over some eleven hundred feet of the bridge structure, the company deriving a larger income from the use and rent of the wharves and docks with free access than could otherwise have been derived from the toll, but if the gate should be restored to its former position at the west end, the tolls would be largely increased over what they are at present.

The wharves and docks are no essential part of the bridge structure, and are not physically necessary to sustain the same, or to accommodate public travel over the bridge, but the company has always regarded them as an important branch of its business and a principal source of its income. They receive from the public generally, for the use of a portion of the wharves and docks, about three thousand dollars per year. Another portion is occupied by the New Haven Steamboat Company, to transact its business and receive and deliver all its freight, under a lease for that purpose from the plaintiffs, from which the plaintiffs derive an annual rent of fifteen hundred dollars. Still another portion of the property

has for several years past been leased by the plaintiffs to the Hartford & New Haven Railroad Company, under which lease the railroad company has erected a large and expensive freight depot on the same, has laid several tracks for cars and locomotives to pass over the same, and cars and locomotives daily pass to and from the depot over the property, and a large amount of freight is received and delivered by the railroad company at their depot, for which use the railroad company pays to the plaintiffs an annual rent of fifteen hundred dollars.

Fifty-three sixtieths of the beneficial interest of the entire capital stock and property of the bridge company is vested in the railroad company, and enhances the market value of the stock of the latter. The value of the shares in the bridge company is not less than one thousand dollars each, which value is derived mostly from the wharves and docks as distinguished from the bridge structure proper, and the bridge company is regularly taxed on its capital stock by the state, as a corporation. The shares of its stock are likewise taxable at their full market value in the hands of the holders of the same. The assessors of the town of New Haven assessed the plaintiffs by reason of their ownership of the above described property on the list of 1865, as follows:

" Wharves and docks occupied by the New Haven Steamboat Company, and Hartford & New Haven Railroad Company, and not used by the aforesaid bridge company, including the 10 per cent. addition, $100,000.

" Building occupied as an office by the New Haven Steamboat Company, $2,000."

Taxes were duly laid on this assessment, payable July 1st, 1866, by the Town and City of New Haven, and by the New Haven City School District, to the amount in all of fifteen hundred and thirty dollars ; a tax warrant for the collection of the same was issued by the proper authorities in due form and placed in the hands of the defendant, who was the lawful tax collector for the town, city and school district, and under the duress of the warrant the plaintiffs involuntarily, and to prevent a seizure and sale of their goods and estate by the

defendant, paid to him, on the 8th day of October, 1866, said sum of fifteen hundred and thirty dollars, together with the sum of fifteen dollars and thirty cents demanded as one per cent. addition under the statute for neglect to pay by the 1st of September, 1866.

The statute under which the property was assessed (Gen. Statutes, p. 712, sec. 23) provides " that the real estate belonging to any bank, national banking association, insurance company, or other private corporation, over and above what may be required and used by such bank, insurance company or other private corporation, for the transaction of its appropriate business, shall be liable to be assessed and set in the list of such corporation in the town where such real estate is situated, and shall be liable to taxation to the same extent as if owned by an individual."

If upon these facts the court should be of opinion that the appropriate business of the plaintiffs as a corporation could not legally include the use and renting of the wharves and docks in the manner and for the purposes found, then the auditor found that the property so assessed was over and above what was required and used by the plaintiffs in the transaction of their appropriate business ; but if the court should be of opinion that the appropriate business of the plaintiffs might legally include the use and renting of the property in the manner and for the purposes stated, then he found that the property so assessed was not over and above what was required and used by the plaintiffs for the transaction of their appropriate business.

On these facts the case was reserved for the advice of this court.

*Watrous*, for the plaintiffs.

1. This tax is grossly inequitable and unjust. Taxation to be just should be equal ; it should not be *double* on some property, while it is *single* on other property. These wharves are already taxed *three* times.—1st. The great bulk of the plaintiffs' property is in these wharves, and the market value

of their stock depends almost wholly on them. On this market value the state tax is laid. Gen. Statutes 719, sec. 52.—2d. The shares of stock, deriving their value from these wharves, are again taxed as the property of their respective owners. Gen. Statutes, 720 sec. 53.—3d. Furthermore 53-60ths of the entire property of the plaintiffs belongs to the Hartford & New Haven Railroad Co., and goes to enhance the market value of its stock, on which it pays to the state a tax of one per cent. It is against the policy of our law and of all just laws to tax any property twice, much more to tax it four times, and courts of justice will not allow such unjust taxation unless clearly compelled so to do by the sovereign power of the legislature. *New Haven* v. *City Bank,* 31 Conn., 114 ; Ang. & Ames on Corp., §§ 460, 461.

2.  The tax is as clearly illegal as it is unequal and unjust. Building and using these wharves is a part of the " appropriate business " of the plaintiffs.—1st. They are by their charter expressly authorized " to purchase and hold lands not exceeding one hundred acres, *appurtenant* to said bridge, for the purpose of carrying this resolve into effect." The resolve gives the power to *build* and imposes the duty to *keep in repair* a bridge. These appurtenant lands were of no value till filled in and improved by the plaintiffs. How then were they to aid the purpose of the resolve ? Doubtless the lands could be *sold.* But this would not aid the company in carrying out the resolve, for, unimproved, they would bring nothing, or no more than the nominal price paid for them. The legislature must therefore have contemplated the improvement and *use* of these lands by the company. And *what* use, if not the most natural, feasible and practicable use ? This is just the *use* the company has made of those " mud flats" from 1797 to the present time ; it filled them up and constructed wharves upon them, and in that way (as it could not in any other) made them aid in " erecting and *keeping in repair"* the public bridge. The bridge could never have been built and kept up, except for the lands and the wharves thereon. It is so found.—2d. The legislature empowered the plaintiffs to occupy for their corporate business

lands on which, for more than fifty years, a ferry and *wharves* had been maintained when the charter was granted. See finding. It could not have contemplated the *abandonment* of these wharves, when it authorized the building of a bridge in place of the ferry, and the purchase of a hundred acres of land appurtenant to the bridge. It must have contemplated their maintainance and their enlargement from time to time, as the plaintiffs might find for their own interest, and the accommodation of an increasing commerce.—3d. If it can be supposed that the legislature did not have in view this particular " use " of these lands, still the law would infer that they could be put to a *reasonable, appropriate and profitable use.* The use made of them is not only *a reasonable and proper* one, but from the nature of the property and its situation it is the only advantageous use that could be made of them. The powers and rights expressly granted would fail without such an implication. 2 Redf. on Railways, sec. 231 and notes ; Pierce on Railways, 9, 14, 54. " The grant of a right carries with it as an incident the grant of suitable and proper means to enable the grantee to exercise that right and to reap and enjoy its fruits." *New Haven* v. *City Bank*, 31 Conn., 110. See also *Moss* v. *Averell*, 10 N. York, 449, 454 ; *Schenectady & Syracuse Plank Road Co.* v. *Thatcher*, 11 id., 102 ; *Durfee* v. *Old Colony R. R. Co.*, 5 Allen, 530.

3. If there can be any doubt as to the fair import of the terms of the plaintiffs' charter, as a new question, still that doubt is entirely removed when we look at the history, claims and acts of the company, and of the public, from the organization of the company in 1797 to the present time. It will be found on an examination of these facts, as found by the committee, that the charter has, by immemorial usage, received a construction which neither the state nor any citizen of it ought to be at liberty to dispute. Or, if assent cannot be conclusively presumed, then by an adverse use the right has been acquired, and in either aspect the right has long since matured as against everybody, and the plaintiffs now are and long have been, in the use of these wharves, engaged in their " appropriate business," and are not taxable for them under

the statute in question. *Mayor of Hull* v. *Horner*, Cowp. 102 ; *Withnell* v. *Gartham*, 6 T. R., 388, 398 ; *Davidson* v. *Fowler*, 1 Root, 358 ; *Episcopal Church* v. *Newbern Academy*, 2 Hawks, 233 ; 2 Redfield on Railways, sec. 233 *c*, §. 3.

4. The plaintiffs have by *prescription* a right to maintain and use these wharves.—1st. The *creation* of a corporation by act of the sovereign power will be presumed after the lapse of much less time than the plaintiffs have owned and used these wharves. *Johnson* v. *Ireland*, 11 East, 280 ; *Read* v. *Brookman*, 3 T. R., 158 ; Ang. & Ames on Corp., § 70 ; 1 Redfield on Railways, sec. 17 *a ;* *Green* v. *Chelsea*, 24 Pick. 71 ; *Avery* v. *Stewart*, 1 Cush., 496 ; *Shrewsbury* v. *Brown*, 25 Verm., 197 ; *Thorpe* v. *Rutland & Burlington R. R. Co.*, 27 id., 140 ; *Hart* v. *Chalker*, 5 Conn. 311, 315.—2d. Prescription runs in favor of a corporation in the same way as in favor of an individual. Cases above cited ; also *Greene* v. *Dennis*, 6 Conn., 292, 296, 302.—3d. A *fortiori* will the grant of a particular corporate function or franchise be presumed from lapse of time. *Mayor of Hull* v. *Horner*, Cowp., 102 ; *Bank of U. States* v. *Dandridge*, 12 Wheat., 70.—4th. The right to build and use a wharf is a "franchise," and a grant of the same will be presumed. 2 Washburn Real Prop., 78 ; *Gray* v. *Bartlett*, 20 Pick., 186 ; *Wiswall* v. *Hall*, 3 Paige, 313, 318.—5th. If the building and using of these wharves is not the "appropriate business" of the plaintiffs, then they are acts *ultra vires*, and the plaintiffs are, and for seventy years have been, *mere usurpers* and *Quo Warranto* would lie for the usurpation. Ang. & Ames on Corp., § 737. But such a proposition would be simply absurd. Ang. & Ames on Corp., § 743 ; *Winchelsea Causes*, 4 Burr., 1962.

5. These wharves are personal estate. The charter provides that " said bridge and all property appurtenant thereto, and vested in and belonging to said company, shall be considered and is declared to be personal estate." Not the " stock," as in many charters since 1797, but the *property* is declared to be " personal estate."—1st. This is a covenant on the part of the state that neither it nor any person or corporation deriving power from it, should be at liberty to consider and

treat this bridge and the property appurtenant as real estate. Pierce on Railways, 54 ; *Bangor & Piscataquis R. R. Co.* v. *Harris*, 21 Maine, 533 ; Ang. & Ames on Corp. §§. 448, 452 ; *Cape Sable Co.'s case*, 3 Bland. Ch., 670.—2d. It would be impairing the obligation of the contract to allow this property to be taxed as real estate now.   There was no law permitting *double* taxation of the plaintiffs' property when their charter was granted.   The law under which this tax was collected was passed more than fifty years after they were chartered and in the full exercise of all their privileges.   Ang. & Ames on Corp., § 462 ; *Washington Bridge · Co.* v. *The State*, 18 Conn., 53.

*C. R. Ingersoll*, for the defendant.

1.   The " appropriate business " of the plaintiffs as a corporation does not legally include the use and renting of wharves in the manner found.   They were incorporated for a specific object which is fully expressed in their corporate title, " to erect and support a toll bridge from New Haven to East Haven."   For *that purpose* they had " liberty to purchase and hold lands not exceeding one ·hundred acres." There is not an expression in the charter to indicate that this power to hold lands was granted for any other purpose whatsoever.   The powers of the corporation are only such as are expressly granted or necessary to the enjoyment of those granted.

2.   The property in question being real estate, and " over and above what was required and used for the transaction of their appropriate business," was liable to assessment and taxation.   Gen. Statutes, p. 702, sec. 23.   And this, whether the renting and use of it in the manner found was legally within the chartered powers of the plaintiffs or not.   It is the policy of our law that real estate should pay taxes to the community within which it is situated, irrespective of the residence of the owner.   This policy has been adhered to although it has sometimes resulted in double taxation.   Such double taxation is not illegal.   *Savings Bank of New. London* v.

*Town of New London,* 20 Conn., 111, 117. No court has a right to interfere with the exercise of its discretion by the legislature in the matter of taxation. *Coite* v. *Society for Savings,* 32 Conn., 184 ; *Salem Iron Factory Co.* v. *Inhabitants of Danvers,* 10 Mass., 514; *Tremont Bank* v. *City of Boston,* 1 Cush., 142. Statutes exempting property from taxation are always construed strictly. *Vermont Central R. R. Co.* v. *Burlington,* 28 Verm., 193 ; *Railroad Co.* v *Berks County,* 6 Barr, 70 ; *Proprietors of Meeting House in Lowell* v. *City of Lowell,* 1 Met., 538 ; *Inhabitants of Worcester* v. *Western R. R. Corporation,* 4 id., 564 ; *State* v. *Commissioners of Mansfield,* 3 Zabr., 510; *Regina* v. *Overseers of Manchester,* 3 Eng. L. & Eq. R., 314 ; *Clarendon* v. *Rector of St. James,* 5 id., 393 ; *Purvis* v. *Traill,* 3 Exch., 344.

3. The provision of the charter, that the bridge and other property appurtenant to it belonging to the company, should be considered as personal property and held in shares by the members of the company, does not change the legal character of the property here in question and make it personal property. This provision has reference merely to the ownership by the members of their several interests in the property constituting the capital stock of the corporation. It was not intended to affect the character of the property owned by the corporation itself. It was intended merely for the convenience of the members in holding and transferring their interests, and not to affect the relations of the corporation to the public. Ang. & Ames on Corp., § 171; *The King* v. *The Dock Co. of Hull,* 1 T. R., 219 ; *Salem Iron Factory Co.* v. *Inhabitants of Danvers,* 10 Mass., 515 ; *State* v. *Commissioners of Mansfield,* 3 Zabr., 510 ; *State* v. *Tunis,* id., 546 ; *Cumberland Marine Railway* v. *Portland,* 37 Maine, 444.

HINMAN, C. J. The assessors of the town of New Haven assessed the plaintiffs, by reason of their ownership of certain wharves and docks, and a certain building upon them, situated at the steamboat landing, in the city of New Haven, near the westerly terminus of the plaintiffs' bridge, the sum of one hundred and two thousand dollars, and the defendant,

as the collector of the taxes regularly laid by the Town and City of New Haven, and by the New Haven City School District upon that assessment, having collected the taxes under duress of his warrant, the plaintiffs now seek to recover back the money so collected in this suit. The question therefore is, whether the property so assessed was liable to taxation under the plaintiffs' charter, as real estate under the 23d section of the statute passed in 1847 relating to the assessment of taxes, Gen. Statutes, page 712. That statute provides "that the real estate belonging to any bank, national banking association, or insurance company, or other private corporation, over and above what may be required and used by such bank, insurance company, or other private corporation, for the transaction of its appropriate business, shall be liable to be assessed and set in the list of such corporation, in the town where such real estate is situated, and shall be liable to taxation to the same extent as if owned by an individual."

The first two claims of the plaintiffs are so nearly identical that they may properly be considered together. They are in substance that the tax in this case is grossly inequitable and unjust, because if sustained it amounts to double taxation; or, as is claimed in this case to be the fact, the property under the statutes as construed by the defendant, is taxed three or four times. This is said to be so, because the market value of the stock of the plaintiffs is to a great extent dependent upon the value of these wharves; and as the bulk of the stock is owned by the Hartford and New Haven Railroad Company, the value of the wharves enhances the value of that company's stock; and as a state tax is laid upon the value of this railroad stock, and as the stock is also taxed as the private property of its individual owners, it is therefore burdened with some three or four distinct and separate taxes. We have not deemed it important to enquire into the fact as to whether this property is subjected in some form to other taxation than such as is imposed by the statute under which the taxes in question were collected, because, as remarked by Ellsworth, J., in the case of the *Savings Bank* v. *The Town of New London*, 20 Conn., 117, "taxation at best is unequal and arbitrary, and under

the present law is double in the case of banks, whose real estate (not used for a banking house) is taxed, while their stock is taxed to individuals who own it." And it may be added that the instances in which property is taxed more than once are not very infrequent. Formerly it was the case in respect to that large amount of indebtedness secured by mortgage, where the debt was liable to taxation against the creditor, and the property by which the debt was secured was also taxed against the mortgagor. No doubt it is and ought to be the general policy of the legislature to avoid double taxation of the same property. But there is also as little doubt that this general policy is not always carried out. And while it may be true that in a case of doubtful construction as to the meaning of the legislature, this policy might be sufficient to authorize the court to give a construction to a statute that would avoid this result, still, in cases where the language is clear, the fact that it imposes double taxation will never justify a court in disregarding it.

Again, it is claimed that the legislature granted to the plaintiffs by their charter power to purchase a large quantity of land, in pursuance of which the plaintiffs did purchase a strip of mud flats on each side of the river, much larger than was necessary for the mere purposes of the bridge; that it must have been purchased for the purpose of constructing wharves upon it; that the plaintiffs very soon commenced constructing wharves upon these flats; that the legislature has since repeatedly had the charter of the company under consideration, and has made alterations in it, yet in no instance was the known use the plaintiffs were making of the property complained of; and it is claimed that thus a construction has been put upon the charter which can not now be disputed, or at least that the right has been acquired to so use this property; and that it thus becomes a part of the appropriate business of the company to own and rent wharves; and that so, under the language of the statute, the property can only be taxed as a part of the capital of the company. We do not assent to this proposition. On the contrary we think the only appropriate business of the plaintiffs was the erection and

maintenance of a toll-bridge. As incident to this business they would need land on which to erect the structure with its abutments and piers, and large quantities of dirt and gravel would also be required for the purposes of grading and filling in, and in view of this necessity the company was authorized to purchase and hold not exceeding one hundred acres of land. But the legislature never intended that the authority to purchase and hold lands should be made use of as an authority to build and rent wharves, any more than it intended to authorize the building and renting of stores or houses, or the business of farming, whatever might have been the object of the applicants themselves in procuring the charter with these provisions to be granted. And where there are no words in the grant, as we think there are none in this company's charter, to justify the building of wharves for the mere purpose of deriving an income from the renting of them, the long-continued practice of the company in pursuing the business can not authorize us to imply such a power.

Again, it is claimed that the plaintiffs have by prescription acquired the right to maintain and use the wharves and docks in question. The question in this case is not as to whether such a corporation as the plaintiffs exists. Here the existence of the corporation is claimed by the plaintiffs, and not denied by the defendant. The charter of the company is shown and relied upon as evidence of the power to hold and maintain these wharves as a part of the appropriate business of the company under it. There is, therefore, no room for prescription as to what is the appropriate business of the company as it affects the right of the public to tax its property. That must depend upon the charter. The plaintiffs show their grant and profess to be acting under it, and at the same time are claiming power to do acts which are not authorized by it. These claims are repugnant to each other and can not be sustained.

The remaining claim of the plaintiffs is that these wharves and docks are personal property, because, as is claimed, the charter makes them so. The charter provides that the "bridge and all property appurtenant thereto, and vested in and be-

longing to said company, shall be considered, and is hereby declared to be, personal estate." But the town of New Haven has not attempted to tax the plaintiffs' bridge, and it claims that the property which it has taxed is in no sense appurtenant to it, and, therefore, not within the language of this clause of the charter. Of course, the property must, under the statute under which the tax was laid, be "real estate, over and above what was required and used" in the appropriate business of the corporation. And if such is the fact in regard to this property, then it is difficult to see how it can be any part of the bridge, or be appurtenant to it. The property itself, therefore, does not come within that provision of the charter making certain of its property personal estate, unless it is appurtenant to the bridge structure itself, and this is hardly claimed to be the case in respect to that portion of it that is found to be at a distance of five hundred feet from the structure. And if any part of the wharves and docks can properly be said to be appurtenant to the bridge, it can, we think, only be so said in respect to the two small wharves with which the bridge was provided when first erected. And how it might be in regard to these we have no occasion to determine at this time, as we are not aware that they are included in or constitute a part of the property upon which the tax was laid, and the plaintiffs make no separate or distinct claim in respect to them.

Again, we do not think that the provision in the plaintiffs' charter in respect to the bridge and the property appurtenant to it, declaring that it shall be considered to be personal estate, was intended to change the character of the estate, so as to make the real estate that the company purchased under its power to do so, personal estate the moment the company became its owners. At the time the charter was granted it was probably supposed that the shares in such a corporation might be considered real estate, unless some provision of this sort was inserted in the charter, as was afterwards held to be the case in respect to the shares in a turnpike company in the case of *Welles* v. *Cowles*, 2 Conn., 567; and to guard against this result this provision was, we have no doubt, inserted in

the charter. We assent, therefore, to the claim of the defendant's counsel upon this point, that the property that by the charter was declared to be personal estate was simply that which was to be divided into and represented by shares of stock. The object was to facilitate the transaction of the business of the corporation, and enable the stock to be transferred by the individual holders of it without the inconvenient formality of making deeds of it as if it were real estate; as remarked by Chancellor Walworth in *The Mohawk & Hudson Railroad Co.* v. *Clute*, 4 Paige, 393, in speaking of a provision declaring the stock of a company personal property, "it merely relates to the nature or character of the property which the stockholders are to be deemed to have in the several shares of the stock of the company as individuals, and not to the character of the property held by the company in its corporate capacity for the benefit of such stockholders." We can not think, therefore, that the legislature by one clause of this charter intended to authorize this company to purchase and to hold real estate not exceeding one hundred acres, and intended at the same time by another clause to turn this real estate into personal property as between the company itself and third persons. But by the construction which we give to the charter there is no conflict whatever between these two provisions.

Upon the whole case, therefore, we have come to the conclusion that the wharves and docks were and are real estate, not used by the plaintiffs in the appropriate business which the charter authorized; and that they were therefore liable to taxation by the town and city of New Haven. We therefore advise the superior court that the defendant is entitled to judgment.

In this opinion the other judges concurred.