The opinion of the court was delivered by
Duncan, J.
The first, second, and third bills of exceptions have been abandoned by the plaintiffs in error. They fell within'the principles of Gephart’s Executor v. Gephart, “that a plaintiff executor, not having released the contingent compensation, in the nature of commissions, which might be allowed to him, on the sum recovered in the action, on the settlement of his- accounts in the Orphans’ Court, is not a competent witness.”
*219 The fourth bill of exceptions, relates to the deposition of Andrew Walker. This deposition was objected to in the whole and every part, by the counsel of the plaintiffs in error, without stating any particular exception, or directing the attention of the court to the matter now objected to. The court struck out such parts of the deposition as appeared to them exceptionable, and I cannot now, when all- attention has been drawn to the minute objections, discover any part of it, which was received in evidence, that ought to have been rejected. But it is unreasonable to expect,, that the court on the trial of a cause, when a deposition is offered, stating many facts, should stop the progress of the cause, to con over a long deposition, and scrutinize every particular in it, with eagle eyes, to find out some error. The party excepting, ought to know the cause of his exception, (and he has an opportunity of examining it at his leisure,) to examine it with a view to discover whether it contains any irrelevant or improper matter. It will not do for him to shroud himself in mystery; object in the lump, and put the court and the adverse counsel on guessing what his objection might be. The opposite party, if the objections had been communicated, might have-withdrawn the particular matter; or the court might have overruled it. A court of error ought not to lend an ear to such covert objections. A party offering evidence, when called on, should state the purpose for Which it. is offered, for on the main question, it might be wholly irrelevant, yetan incident might have occurred during the trial, which would render it material; as where the credit of a witness is impeached, that might bé evidence to corroborate him, which would not be received on the issue. That was the case in Stewart v. Richardson. There the opinion of the court was, that if there hád been a cadi on the party, he should ha^e stated the view with which' it was offered. This court has already decided, that a party objecting to a deposition, should state the ground of his objection, and on much deliberation has come to the conclusion, that where an objection is made to a deposition in toto, if any part of it is legal evidence, not to reverse the judgment, though other parts of it may be inadmissible. This rule, like other general rules, may be liable' to exceptions. When they arise, they will be decided on. The matter objected to may be so very palpable, so directly opposed to every principle of justice, as to strike every man on the slightest investigation. Since the decision of this court on this subject, a case of this nature occurred in the Supreme Court of New York, Jackson v. Hoffy, 20 Johns. 362. The counsel objected to the whole depositions, because they had not been filed. He afterwards objected to reading the deposition of a particular witness, but said no more. Chief Justice Spencer observed, “ The specific objection was a ground for reversing the judgment, which made it unnecessary to advert to the other made in mass.” Büt he took occasion to remark, that it was Very questionable, whether any other objections, than the-first, *220 were so specific and distinct, as to entitle the party to the benefit of his exception. Good faith, and the convenient administration of justice require, that the counsel who objects to evidence, or excepts to the opinion of the court at the trial, should state the particular grounds of his exception, for the double purpose of calling the attention of the court to the point of the exception, and to offer the opposite party an opportunity of obviating the objection, by additional proof, which, perhaps, had been inadvertantly omitted. Without explanation, the opposite counsel was not bound to answer-such vague objections, nor was-it. the duty of the court to notice them. , ■ ’
The numerous errors to the charge of the court in the plaintiffs specifications, are, in my opinion, confined in very narrow bounds, and cover but a small space. The true questions are, did Neff stand in that state, as to Porter, that he could not in conscience retain the money he received on his judgment, but ex sequo et bono, ought to refund it. I consider the case as open to every investigation, as if it were a bill in equity ; the object of the parties by their agreement, being to try the merits, without regard to form. And secondly, could the executors of Porter revive the mortgage, by taking an assignment of it, so that it might retain its, lien, and be entitled to priority, as if it had never been paid or satisfied ? I cannot fall in with the very ingenious argument of the counsel of the plaintiffs in error, that Neff’s, entering up his judgment at the time he did, was such act of bad faith, as to postpone him to Porter. His debt was a just one; he had a right to secure it by bond and warrant of attorney; the warrant of attorney authorised him to enter it up immediately, without waiting for default of payment, and it is not unworthy, of observation, that the debt was not payable at a distant day, but at the end of sixty days, showing strongly, that iVé^ would not trust Clark, even for that short time, on his personal security, but took one which he could realise instanter. ■ The statement of Neff, as declared by Judge Hale, before the arbitrators, of the conversation between Clark and Neff,. that gentleman has no recollection of; his memory does not serve him to state all that was said, and his impression arises solely from .Neff’s naivete of manner, in stating his nocturnal cogitations, and his conversations and reasonings with himself in his bed, when on that consultation, he determined to enter up-his judgment immediately. Such conversation, I have nó doubt, took place between Clark and Neff. It formed no part of the obligation, and was directly contrary to the written warrant of attorney to enter it up immediately on Clark’s assurance, that the money would be paid in a few days, and request not to enter it up for that time. I do not think the gratuitous assent to that request, should so bind the hands of the plaintiffs. If he had serious apprehensions that his debt would be lost by the delay, there would be a locus penetentim, and there would be nothing unfair in his immediately exercising *221 the power, which his obligation gave him. The event shows, that he took very good advice of himself. The Court of Common Pleas, would not have set aside the judgment on the allegation now made to relieve a purchaser who had neglected to search the records, or any judgment creditor, or to relieve the debtor himself, on proof of such discourse between Clark and Neff, for I cannot see any difference between Porter and Clark in this respect. If Claris brought an action, what would be his damnification ? If Clark could show that he had estate sufficient, that he had no intention of defeating the security which he had given, and that the entry of the judgment had injured him, that would have made another case; but independent of the objection of its being nudum pactum, I cannot see what.cause of complaint Clark has, what equity against Neff, when the facts show, that if Neff had waited the eight days, his debt was gone for ever.
If Neff had in any way led Porter to believe, that he would not enter his judgment until Clark had conveyed to him,' and on the faith of that, Porter had paid,his money and taken the conveyance,- and while the matter was transacting, but before the conveyance, he had entered up his judgment, this would be a fraud on Porter, and Neff ought to be postponed. This would be an unnatural presumption ; such, fraud as ought not to be presumed, and there was not any scintilla of evidence, that Neff had any knowledge of the treaty; and if he had, still there could be no fraud in entering up. his judgment, because it was the duty of the purchaser to examine thé record. Porter and Neff, never..came in contact with each other. As between Clark and Neff, Neff committed no fraud on Clark, but prevented Clark from committing a fraud on him: for it would have been fraudulent in Clark, to request Neff, not to enter up his judgment for eight days,, and. in the mean time to convey the very security which the warrant of attorney was intended to reach. As between Porter and Neff, there was no communication or privity; no combination between Clark and Neff to defraud Por ter. A Court of Chancery would notinterpose and take away this plank from the creditor, on-the shipwreck of Clark’s affairs. I have considered this action as a billin Chancery, containing all the facts given in evidence, and on the whole of this case, I can see nothing unconscientious in retaining the fruits of it. If Neffhzs obtained an advantage from Porter’s purchase and extinguishment of the mortgage, it is an advantage not gained by any fraud committed by him. He did nothing clandestinely as to Porter. The injury of Porter arises from his own negligence, and from his confidence in Clark, without exercising common prudence in searching the records, and it is a maxim in equity, that he who trusts another, without taking security, shall suffer and not he who has not trusted, but taken a security. So far I think the court was right.
I have considered this case as if Neff’s judgment could be inquired into in this collateral action between Porter’s executors and *222 him;, a proposition which it might be very difficult to maintain, particularly as there has been a judgment on the scire facias. But from the view taken of the whole case, it has not been deemed necessary to give any opinion on it. It is at least a matter of very doubtful propriety.
The remaining question is, was this a subsisting mortgage on which a scire facias might be sustained against the terretenants? There has been a loss, perhaps solely arising from the change of the times, and the fall in the price of land, by which so many have been ruined. The mortgage was recorded prior to the defendant’s judgment. After the defendant’s judgment, Clark conveyed to Porter, The consideration was 2800 dollars. Porter paid 2300 dollars, and became, bound to discharge the 500 dollars, due on this mortgage. Porter became paymaster to Walker, the mortgagee, with an express engagement that he would pay Walker. Walker swears that he and Porter agreed that the mortgage should be lifted. Porter gave his obligation to pay it, paid part and the residue has been paid, by the plaintiffs, hisexecutors. Neff issued his fi. fa to Jlugust, 1818. On the 30th June, 1818, the property was levied on and condemned. The plaintiffs do not take the assignment of the mortgage until 23d •September,■ 1818. There was no agreement between Porter and Walker, respecting an assignment; it was payment; ’this very mortgage was part of the purchase money. How can the intervention of Neff’s judgment, change it into an assignment? When Porter died, it was payment and satisfaction; can it be set up again to overreach Neff’s. judgment? Without questioning the right of parties to come to an agreement, that the mortgage shall be assigned to a purchaser for his security, there was no agreement to this effect. Clark, the mortgagor, Walker, the mortgagee, Porter, the Vendee, all concurred in this one object; payment and satisfaction. Assignment and keeping the mortgage up, to secure the purchaser, were not in the contemplation of any one of the contracting parties. They were not thought of until the danger arose from Neff’s judgment, and the unexpected insolvency of Clark. The presumption of law is, that Porter had notice of this judgment, and knowing it, went on with his contract with Clark and Walker. The assignment was'clearly an after thought. The law is with Neff. His equity is equal to Porter’s, and where the equity is equal, the law must prevail. Equity will not deprive a creditor of any security he has obtained, unless he has acted unfairly with regard to others. Hamilton v. Callender, only proves this, that taking a collateral security, does not extinguish a mortgage. The law of England, with respect to using satisfied incumbrances to protect purchasers, has no relation to mortgages in Pennsylvania. Our act of assembly puts mortgages on a different footing.. The legal estate never vests in the mortgagee as absolute owner of the land, unless he purchases under, a levari facias. There, after the day of payment and foreclosure, the title is in the inert *223 gagee, and relief is granted in Chancery, because the party is without remedy at law; and equity will grant the, remedy on what terms it pleases. But the act of assembly precludes all necessity for such interference. Redemption, here, is not a principle of equity, but a legal right.. The act expressly confine? the remedy on the rnort- ^ gage, to the recovery of principal and interest, The judgment on the mortgage, • and the levari facias are for the principal and interest. There is no penalty, nor judgment for a penalty. As well might the court refuse to stay proceedings on a single bill, till a subsequent debt was discharged, as in the case of a mortgage. In the execution, in both, no more can be levied than the principal and interest. These principles were settled in Dorrow v. Kelly, 1 Dall. 144. and have prevailed invariably. There'is no natural equity in tacking debts, and where it interferes with the rights of others it is most unjust. A mortgage is but a security, for the payment of the debt, and when that is paid or extinguished, it can never be resuscitated. Wentz v. Dehaven, 1 Serg. & Rawle, 317. The case of Denn v. Wynkoop, 8 Johns. 173, was decided on its own circumstances, and upon the agreement of the parties. The covenant indorsed on the mortgage was a discharge, neither in law nor in equity. It never was payment nor intended' as such. It would have been contrary to the express agreement of the parties, reduced to writingatthe time. The covenant on the mortgage was a necessary instrument. All the instruments; the mortgage by the husband and wife of the wife’s land, the release by the husband to the mortgagee, and the covenant, would all be consti'ued as but one conveyance; the endorsement on the mortgage, a link in the chain of conveyance, which if it had affected the execution of the mortgage, would have defeated the estate it was intended to secure. The mortgaged interest was never reduced; the land was taken for the debt, and Ludlow retained the mortgage, to secure his title, as the release of Barton, (the husband)-alone, did not secure the fee.' The general principles, as applicable!*) the cause on trial, were properly stated, and the judgment must be affirmed.
Iudgment affirmed.