[SUNBURY, JULY 3, 1829.]

## Case of BOAL'S Appeal.

### APPEAL.

An appeal to the Supreme Court, under the act of assembly of the 16th of *April*, 1827, relative to the distribution of money arising from sheriffs' and coroners' sales, should be in the name of the party, or parties aggrieved; and, the recognisance should be taken, in such sum as the Court of Common Pleas may deem necessary, to the commonwealth, or some individual for the use of the parties interested.

A written acknowledgment, of record, by the defendant, that a judgment is in full force, is as effectual to keep it alive, as a *Scire Facias*.

For the purpose of keeping a judgment alive by execution, it is immaterial whether the execution be issued before or after a year and a day from the entry of the judgment.

A writ of restitution on the reversal of an erroneous judgment, creates a lien on goods from the time it goes into the sheriff's hands, and on lands, from the time of the levy.

APPEAL from the order of distribution of the proceeds of the sale of the real estate of *James Boal*, by the Court of Common Pleas of *Lycoming* county.

### (Case of Boal's Appeal.)

A sale of the real estate of *James Boal* having been made under a judgment, obtained against him in the Court of Common Pleas of *Lycoming* county, the money was brought into court, and the distribution of it among the creditors having liens upon the land sold, having, after much contest, been decided by the court, an appeal to the Supreme Court, was entered under the act of assembly of the 16th of *April*, 1827.

To report all the different claims made in the court below, and the decision upon each, would be unnecessary. It is sufficient to state the points considered in the Supreme Court, which were:—

1. In what manner the recognisance on the appeal should be taken.

2. Whether the award of restitution on the reversal of a judgment of an inferior court, be in itself a binding judgment, and if it be, from what time?

3. Whether a written acknowledgment, by the defendant in a judgment, that it is in full force, entered on the docket of the court, be sufficient to keep the judgment alive, without a *Scire Facias?*

4. Whether the lien of a judgment is continued without a *Scire Facias*, by issuing an execution after the expiration of a year and a day.

After argument by *Anthony*, *Armstrong*, *Lewis*, and *Bellas*, in support of the interests of their respective clients, the opinion of the court was delivered by

ROGERS, J.—The estate of *James Boal* having been sold by the sheriff, and an order made for the distribution of the proceeds among the creditors, by the Court of Common Pleas of *Lycoming* county, an appeal has been taken, under the third section of the act of the 16th *April*, 1827, which gives liberty to any person who may consider himself aggrieved, &c. to appeal to the Supreme Court, within twenty days, subject to the same rules and regulations, as appeals made from the decision of the Orphans' Court. The appeal is made from the order of distribution, so that we cannot perceive any necessity for more than one appeal, which vests the jurisdiction in the Supreme Court, to inquire into the whole matter, and distribute the money according to law. And this can be attended with no danger, and but little inconvenience, as all the persons interested are either present in the Court of Common Pleas, or have an opportunity of being so, as it is the duty of the court to cause notice to be given, either personally, or by such advertisements as they may deem proper, prior to making their decision. Besides, the Supreme Court will take such order, on a proper application, as to prevent the rights of persons being affected, who have no opportunity of being heard. The opinion of the court has been required, as to the form of the appeal. We are of opinion, that it should be in the name of the party, or parties aggrieved, and that the recognisance should be taken in such sum as the Court of Common Pleas may deem necessary, and to the commonwealth, or

(Case of Boal's Appeal.)

some individual, for the use of the parties interested. The recogni-sance was taken in the name of *James Boal*, the defendant, and we will intend, that it is for the benefit of those who may be aggrieved by the appeal.

The order of distribution involves several questions, which, when settled, removes all difficulty in the distribution of money raised by the sheriff's sale.

We agree with the Court of Common Pleas, that the entries on the docket, by *James Boal*, continued the lien of *Williams's* judg-ment, and this is on the authority of a case decided in *Philadelphia*, and not yet reported.

Although the *Fieri Facias* in *Brown's* judgment did not issue until after a year and a day, it is not distinguishable in principle from *Taylor* v. *Young*, 2 *Binn*. 228. In that case, it was decided, that an execution within a year and a day, continues the lien of a judgment, without resorting to a *Scire Facias*, under the act of as-sembly of the 4th of *April*, 1798. And the reason given by Justice YEATES is, that the *Scire Facias* operates as notice to the parties interested, and evidences the intention of the creditor to claim the lien of his judgment: That the taking out a *Fieri Facias*, levying on the goods and lands of the defendant, and condemning the lands by an inquest, are matters of notoriety; and, in point of notice of the creditor's pretensions, tantamount to a *Scire Facias*. The dis-tinction between an execution issued before, and after the year and a day, is too nice for ordinary comprehension; and, in practice, it has been considered as making no difference. To decide otherwise, would endanger many honest claims. This point has lost most of its importance by the act of assembly of the 26th of *March*, 1827, passed to remedy what some consider a misconstruction of the act of assembly of 1794. That act is prospective, and confirms, rather than invalidates the uniform practice which has obtained, since the case of *Taylor* v. *Young*.

The next question is, whether a writ of restitution be a lien, and from what time. A judgment of reversal, is a judgment of the Su-preme Court; and the practice is, to remit the record to the Court of Common Pleas, in order to have the judgment carried into effect. *Russel* v. *Gray*, 6 *Serg. & Rawle*, 208. *Duncan* v. *Kirkpatrick et al.* 13 *Serg. & Rawle*, 292. The difficulty is, not whether it be a judgment, but whether it be a lien, and from what time it com-mences. After a most diligent search, I find but little in the books calculated to throw light on the question, nor have the researches of counsel been more successful. We do not consider the lien as com-mencing from the time of reversal, from the danger and almost certainty of affecting the rights of *bona fide* purchasers, without notice. This would be an unreasonable effect of the judgment of reversal. It is not pretended, it would bind lands through the whole district, or in the county where the Supreme Court held its session, but in the county from whence the judgment came, and to

(Case of Boal's Appeal.)

which, for execution, it must be remitted, and this would expose it to the objection which I have mentioned. It is the opinion of the majority of the court, that as the writ of restitution is strictly an execution, it comes within the same rules as other executions; and, that the lien commences on the goods from the time the writ goes into the hands of the sheriff; and, on the lands, from the time of the levy, &c. My opinion is, and in this, I believe, I speak the sentiments of Judge Tod, that the lien commences from the time of the remittance of the record, and docketing it in the county from which it was removed. To avoid misapprehension, we would wish to be understood, as not extending this decision beyond the special facts of this part of the case.