[Philadelphia, February 9th, 1835.]

## ] WATERS *against* LARGY.

5 R    131|
30 SC   642|

### APPEAL.

*A.* being about to borrow money of *B.* on mortgage though the agency of *C.* a money broker, it appeared by the certificates that a judgment was outstanding against him. *C.* produced to him the receipt of the judgment creditor for the amount of the judgment; upon which *B.* lent the money.—Afterwards *A.* being in want of more money applied to *D.* for a loan; and to satisfy him that the property was clear of incumbrances obtained from *B.* the certificate, together with the receipt of the judgment creditor; upon which *D.* made the loan. In the meantime *C.* had procured the judgment creditor to mark the said judgment to his use, and it so appeared on the certificates of judgment obtained by *D.* *Held*, that the lien of this judgment was extinguished by the payment of the money and could not be revived by the marking to the use of *C.* and under the circumstances, that *D.* was entitled to payment in preference to *C.*

This was an appeal from the decision of the District Court for the city and county of Philadelphia, on the report of the auditor appointed to make distribution of the moneys arising from the sale of the defendant's real estate, at the suit of the plaintiff, *Charles Waters.*

The court decided that a judgment for one hundred and three dollars and thirty-nine cents in favour of *A. D. Cash,* was entitled to priority over a judgment for the plaintiff.

The plaintiff appealed, and assigned for reasons that the court erred in preferring *Cash's* judgment, that having ceased to be a lien on defendant's estate at the time of the distribution, and because even if *Cash's* judgment was a lien at law, yet it must be postponed to the plaintiff's; *Cash* having represented in *fact* that his judgment had been paid and satisfied.

The material facts of the case are as follows. About the 25th January, 1833, *Peterson* having a sum of money to invest, applied to *Cash,* a conveyancer and money broker, to procure a real security. *Cash* mentioned a Mr. *Largy* as wanting the money on a house in Logan street, to be clear of all incumbrances, to which *Peterson* consented. *Cash* directed searches for incumbrances, and in presenting the certificates of judgment to Mr. *Peterson,* the latter noticing an unsatisfied judgment against *Largy* in favor of *John Goddard* for ninety-four dollars and twenty-five cents, objected to making the loan till that was paid. In a day or two afterwards *Cash* handed *Peterson, Goddard's* receipt, dated 9th February, 1833, for ninety-four dollars and twenty-five cents, as received from *Cash* for the amount of the judgment against *Largy,* the cost and interest still remaining unpaid. *Peterson* thereupon advanced the money, noti-

(Waters *v.* Largy.)

cing at the same time that the costs and interest had not been paid on *Goddard's* judgment. *Cash* observed that he would see *that* all right *before he parted with the money.* Some time afterwards he paid the costs and interest and had the payment noted on ·the receipt.

About seven or eight months afterwards, *Largy* called on *Peterson* and asked him to lend him the searches which had been left with him at the time of the loan through Mr. *Cash:* his object· being to obtain an additional loan on the. property. *Largy* obtained the searches to which was attached Mr. *Goddard's* receipt. On the evidence of this receipt, *Waters,* the plaintiff, loaned *Largy* two thousand dollars on the security of a judgment without retaining the ninety-four dollars and twenty-five cents considering it to have been paid previously to Mr. *Peterson's* advance.

On the eighth March, 1833, (between the periods of the loans by *Peterson* and *Waters,*) *Cash* procured an order from Mr. *Goddard's* attorney to have the said judgment marked to his use, which was accordingly done on the docket of the Common Pleas on the 13th of August following: and it so appeared marked to his use on the certificates of judgments obtained by *Waters* before loaning his money. The amount of the judgment was paid by a young man on behalf of *Cash* to *Goddard,* who testified that he could not recollect any stipulation or condition at the time of payment or before, relative to a transfer of the judgment, but that he met *Cash* in the street, who then stated that the judgment was to be transferred to him.

The case was argued by *Grimshaw* for the plaintiff in error; and by

*Campbell* for *Cash.*

The opinion of the court was delivered by

KENNEDY, J.—If the judgment against *Largy* in favour of *Goddard* was paid by *Cash* for the purpose of extinguishing the lien of it upon the real estate of *Largy* it could not be revived afterwards by *Goddard's* attorney directing the judgment to be marked on the docket for *Cash's* use. Now from the evidence, it is utterly impossible that the most sceptical mind should doubt as to the object of paying this judgment. It was a lien upon the real estate of *Largy,* when *Peterson* was applied to, to lend his money upon a mortgage to be given upon the estate as a security for the re-payment of it. But he objected to lending, unless this lien were removed, and in order to effect this, *Cash* paid Mr. *Goddard* the principal of the judgment, and at the time of receiving the money on loan from *Peterson* for *Largy,* he promised that before he parted with it he would have the interest and cost of the judgment settled likewise; for which purpose the receipt given by Mr. *Goddard* for the princi-

(Waters *v.* Largy.)

pal of the judgment was left by Mr. *Peterson* with Mr. *Cash* that he might procure a receipt on the same for the interest and costs. Accordingly the receipt was afterwards returned to Mr. *Peterson* with an entry on it of the interest and costs having been paid. Under what arrangement *Cash* advanced the principal of the judgment for *Largy* does not distinctly appear, but certain it is that it could not have been under an agreement that he was to have the judgment assigned to him as a security for his being reimbursed, because a continuance of the judgment in force would have been incompatible with the end of advancing the money, which was to have the lien of it extinguished. Hence it is not material to know how Mr. *Cash* expected to be reimbursed. But no doubt if he had wished, he could have had it out of the money loaned by *Peterson*, as that all passed through his hands. Be that however as it may, it is certain that the judgment was paid for the special purpose of extinguishing its lien. And of all this Mr. *Waters* seems to have been fully advised before he lent his money to *Largy* and took from him his judgment for the re-payment of it. *Largy* himself prevailed on Mr. *Peterson* to furnish the receipt of Mr. *Goddard* in order to satisfy *Waters* that it was paid.

But it is said that the judgment of *Goddard* being marked on the docket for the use of *Cash* before and at the time *Waters* advanced his money and took from *Largy* a judgment for the repayment of it; *Waters* was bound to take notice of *Goddard's* judgment, and to know that the amount of it was claimed by *Cash*. Admitting this to be so, still it will not make the claim of Mr. *Cash* under the judgment good and available. The judgment being once satisfied and extinguished could not possibly be revived afterwards by any act of Mr. *Cash*, or of Mr. *Goddard* or his attorney, or all or any of them without the consent of *Largy* the defendant. But it does not appear that his assent was ever given or even asked for such a purpose; consequently the judgment of *Goddard* must be considered satisfied, and could therefore be no lien on the real estate of *Largy* at the time *Waters* obtained his judgment. *Waters* therefore is entitled to the money that was appropriated by the decree of the court below to the payment of *Cash's* claim under *Goddard's* judgment. I think there is much less plausibility in the claim of *Cash* than there was in that of *Porter's Executors* v. *Neff*, 11 *Serg. & Rawle*, 208, where on the 1st of May, 1807, *A.* executed a mortgage to *B.* which was duly recorded. On the 14th of March, 1815, *C.* entered up a judgment for two thousand dollars against *A.* under a warrant of attorney. On the 17th of the same month *A.* conveyed the mortgaged premises to *D.* for the consideration of twenty-eight hundred dollars, twenty-three hundred of which he paid and agreed to pay to *B.* the mortgagee five hundred dollars, being the balance of the purchase money and the balance due on the mortgage; part of which he paid in his lifetime; and the residue was paid after his death by

(Waters *v.* Largy.)

his executors, who took an assignment of the mortgage from the mortgagee on the 23d of September, 1818. The mortgaged premises were levied on and sold by the sheriff under the judgment of *C.* to *C.* himself. *Held,* that *C.* was entitled to retain the amount of his judgment out of the purchase in preference to the claim of *D.*'s executors under the assignment of the mortgage.

The decree of the court below is reversed, and the money thereby appropriated to the payment of *Cash's* claim under the judgment in favour of *Goddard* against *Largy,* is ordered and decreed to be paid to *Charles Waters* the appellant.

Judgment reversed.