4 W 341
31 SC 67
4w 341
36 SC ²643

## Meason's Estate.

A judgment of revival upon a *scire facias*, and a levy and condemnation of real estate, is an abandonment of a prior levy and condemnation of other real estate, and postpones the original judgment. To preserve the lien the first levy must be relied on.

The period of five years for which the lien of a judgment on a *scire facias* continues under the act of the 27th of March 1827, is to be computed from the rendition of the judgment, and not from the return day of the writ of *scire facias ;* and so *toties quoties.*

The issuing of a *scire facias* to revive a judgment, when one had issued at a preceding term which had been served, is an abandonment of the first, and if the five years had elapsed in the intermediate time, the lien of the judgment would be lost.

The validity of a judgment cannot be questioned on the distribution of money raised by a sheriff's sale.

A toll-bridge erected by two individuals across a river between their lands, by legislative authority, is real estate, and the proceeds of the sale of it by the sheriff are to be so distributed.

Upon the appropriation of the proceeds of the sale of land of a decedent, simple interest is to be calculated upon the original judgments, and not upon each judgment of revival.

APPEAL from the decree of the court of common pleas of *Fayette* county, in the case of the sale of the real estate of Isaac Meason, Esq.

Bank of Washington *v.* Isaac Meason. The facts relating to this judgment were these. 30th of April 1822, judgment: *fieri facias* to January term 1824, levied on real estate, inquisition and condemnation : *scire facias* to January term 1828 ; 6th of January 1831, judgment : amicable revival to January term 1832, entered the 11th of November 1831 : *fieri facias* to January term 1833, not taken out of the office : *alias fieri facias* to September term 1833, stayed, 500 dollars having been paid : *pluries fieri facias* to June term 1834, levied on real estate other than that which had been levied on by the *fieri facias* to January term 1824. The question was, whether out of the sale of the real estate which had been levied and condemned upon the *fieri facias* to January term 1824, the plaintiff was entitled to the amount of this judgment, because such levy and inquisition preserved its lien. The court below decided that the lien of the judgment was preserved. This was one subject of the appeal.

Hankins *v.* Meason's Executors. 9th of November 1822, judgment : *scire facias* to October term 1825 ; 6th of January 1827, judgment : *scire facias* to March term 1829 ; 12th of October 1831, judgment : *scire facias* to June term 1834 ; 4th June 1834, judgment. The question in this case was, whether the five years during which a judgment on a *scire facias* continues the lien, are to be computed from

[Meason's Estate.]

the return day of the writ, or from the rendition of the judgment. The court determined that the computation was from the return of the writ, and discharged the plaintiff's rule to have the funds applied to his judgment. This was a subject of appeal.

Monongahela Bank of Brownsville *v.* Meason. 13th of July 1822, judgment : *fieri facias* to January term 1824, stayed ; *scire facias* to June term 1827, returned *scire feci* to all the defendants : *scire facias* to January term 1828; 6th January 1828, judgment. The question here was, whether the issuing of the *scire facias* to January term 1828, was an abandonment of that issued to June term 1827, which was returned served, and was pending. The court determined that it was, and decided that the lien was lost. This was a subject of appeal.

Union Bank of Pennsylvania *v.* Isaac Meason. The only question as to this judgment was, whether its validity could be inquired into on this appropriation. And the court determined it could not : which was also a subject of appeal.

Hurst *v.* Meason. The defendant, Isaac Meason, and Zachariah Connel, by authority of the legislature, erected a toll-bridge across the Youghiogeny river, which was abutted upon each of their lands. The interest of Meason was levied upon by a *fieri facias* issued upon this judgment, and sold ; and the proceeds formed a part of the fund for distribution. The question was whether it was real or personal estate. The court decided that it was real. This was a subject of appeal.

There were judgments also against Isaac Meason, the defendant, as executor of Isaac Meason, Senior, deceased, which were payable, and which had been revived after the death of the decedent; and the question was, whether the creditors were entitled to more than simple interest on the original judgment, or whether they can count their interest on the judgments of revival.

These questions were argued for the respective creditors, by *M'Giffen, Ewing, Biddle, M'Kennon, Dawson, Todd* and *Austin.*

The opinion of the Court was delivered by

ROGERS, J.—A variety of objections have been made, in the appropriations of the money arising from this sale, affecting the lien of the different judgments, each of which I shall notice in their order.

In Bailey *v.* Meason, which is the first judgment, no exceptions have been filed, as it is properly admitted, on the authority of recent cases, that it has lost its lien. The order discharging the rule is affirmed.

The next in order is the Bank of Washington *v.* Meason, indorsee, &c.

It is insisted that the lien is preserved by virtue of the levy and inquisition ; but in Robins *v.* Bellas, 2 *Watts's Rep.* 365, it was held, that a *scire facias* (even though sued out improperly) was, as

[Meason's Estate.]

regards the plaintiff in the judgment, to be considered as an act of abandonment of a former levy, and a relinquishment of the lien. In that case, Mr Bellas levied upon several lots, but instead of prosecuting the execution to a sale, he issued a new *fieri facias*; and the court held that it was an abandonment of the first levy, and a relinquishment of the lien under it. Here the plaintiff levied on several tracts of land, on which he held an inquisition and had them condemned. He afterwards, without referring to his former writ, issued a *scire facias* to the January term 1828, and on the 6th of January obtained judgment. This judgment was revived by agreement, the 11th of November 1831. The plaintiff then issued a *fieri facias, alias,* and *pluries,* and levied on one hundred and fifty acres of other land, and several lots, and other property. This, on the authority of Robins *v.* Bellas, which it resembles in every particular, with the additional fact that the levy was made on different property, must be taken as an abandonment of the prior levy; and as the plaintiff must rely on the first levy to preserve the lien, it follows that the judgment must be postponed.

The order of the court of common pleas making the rule absolute is reversed, and the rule, &c. is discharged.

Hankins *v.* Meason and Rogers, executors of Meason. The creditors contend that this judgment has lost its lien, because more than five years elapsed from issuing the *scire facias,* viz. from March term 1829, to the *scire facias* returnable to June term 1834. They insist that, under the act of the 26th of March 1827, you commence to count the five years from the time the *scire facias* issued, and not from the date of the judgment rendered.

It must be first remarked that no decision has been made which countenances the idea that either under the act of 1798 or 1827 the count is to be commenced from the issuing of the writ. Poole *v.* Williamson, 4 *Rawle* 317, which has been cited and relied upon for this doctrine, merely decides that under the act of the 4th of April 1798, the lien of a judgment is restricted to a period of five years from the first return day of the term of which it is entered, and that the second period begins to run from the termination of the first. The case was ruled on the express words of the act, which prescribes that the lien of the judgment is restricted to a period of five years from the first return day of the term to which it is entered, contrary to a generally received opinion that, even under that act, it commenced at the time the judgment was rendered.

The manifest intention of the act of the 27th of March 1827, was to give a remedy for several evils, which were suffered to exist in the act of 1798, and the various constructions which from time to time had been given to it. In the first place it changed the law, as above stated, and made the second and other renewals to count from the day of the entry or renewal of the judgment; and not from the first return day of the term of which the judgment was entered, as in the act of the 4th of April 1798. By the terms entry or renewal of the

judgment, the legislature must be taken to mean the rendition of the judgment by the court on the *scire facias*. The lien therefore under the first clause of the act of 1827, is *restricted to a period of five* years from the entry or rendition of the judgment of revival on the *scire facias*, and so *toties quoties* the same may be renewed.

Under the act of the 4th of April 1798, it had been ruled that an execution issued within a year and a day preserved the lien of the judgment; that where a stay of execution was entered on the docket, or a time was fixed for the payment of the money by agreement of the parties, the judgment creditor had five years from the expiration of said time to revive his judgment. To remedy the inconveniences which were supposed to arise from these constructions, was the object of the second clause of the act of 1827. No judgment continues to be a lien on real estate for a longer period than five years from the day on which the judgment may be entered or revived : unless revived by agreement of the parties and terre tenants, filed in writing and entered on the proper docket; or there be a writ of *scire facias* to revive the same, sued out within five years, according to the provisions of the act of 1798—notwithstanding an execution may have been issued within a year and a day from the rendering the judgment; or a stay of execution may be entered on such judgment; or a time subsequent to the rendering such judgment may be appointed by the agreement of the parties, for the payment of the money for which such judgment may be rendered, or any part thereof; or notwithstanding any other condition or contingency may be attached to such judgment.

And it is further enacted, and this constitutes the third clause of the section, that the revival of a judgment by agreement, or the issuing a *scire facias*, either with or without an entry of judgment, shall not have the effect of continuing the lien for a longer period than five years from the day on which it may be revived or such *scire facias* may have issued. The lien, by the act of 1827, is continued either by entry or revival of the judgment, or by a *scire facias* sued out within the period of five years from the revival of the judgment. As, then, the issuing of the *scire facias* has the same effect as the revival of the judgment, it became necessary, to remove all doubts on that subject, for the act to fix the time it should have that operation, viz., as in the case of the judgment, for five years from the time it was issued. When, then, a *scire facias* is issued to revive the judgment, the lien is continued for five years, and no longer. The law does not recognize the possibility, when due diligence has been used, that the plaintiff can fail to obtain a judgment of revival within the period of five years; and what is due diligence is indicated by the act, viz. having a judgment of revival within that time. Nor does this opinion interfere with Vitry *v.* Dauci, 3 *Rawle* 9, which was decided under the act of 1798. In Vitry *v.* Dauci there was gross negligence in prosecuting the *scire facias*, and the court thought there must be due diligence to preserve the lien; but what consti-

tutes due diligence was not, nor could it be determined under that act, which, like the act of 1827, gives no certain rule for our government. In Davis *v.* Jones, 12 *Serg. & Rawle* 60, the court repudiated the English rule, that if the plaintiff does not proceed on his *scire facias* in a year and a day, it is discontinued, and he must sue out another. It is altogether probable the legislature had an eye to Davis *v.* Jones in enacting the third and last clause of the section of the act of 1827.

The order of the court of common pleas discharging the rule is reversed, and the rule is made absolute.

The Monongahela Bank *v.* Meason et. al. The creditors object to the payment of the judgment, because the *scire facias* to January term 1828 was an abandonment of the *scire facias* to the June term 1827, and because more than five years have elapsed from the time the original judgment was rendered until the issuing the second *scire facias.* The second *scire facias* does not purport to be an *alias,* nor was there any necessity for an *alias,* as the return on the first was "*scire feci.*" It is probable that the second was issued without adverting to the first: but from whatever cause the blunder may have arisen, it is a clear case of abandonment; and not being within five years from the judgment, the lien is gone. The order of the common pleas is affirmed.

Baily *v.* Meason, and Trevois' administrator *v.* Meason. The observations already made in Hankins *v.* Meason are applicable here. We perceive no want of legal diligence amounting, as is alleged, to an abandonment. Order of the common pleas affirmed.

Ann Stevens *v.* Meason. The principles already established show this case to be clear of difficulty. Order of the common pleas affirmed.

The Union Bank of Pennsylvania *v.* Meason's Executors. There is nothing in the objection that the judgment entered in this case is void. If defective at all, it is an irregularity which cannot affect the judgment until reversed on a writ of error. The validity of the judgment cannot be questioned on the distribution of the money raised by the sheriff's sale.

A difficulty has been made whether this is a judgment against the executors of Meason, in their individual, or representative capacity. But this we deem to be an immaterial inquiry; as in whatever way it may be viewed, this judgment creditor is entitled to come in on the fund. It is admitted that the property sold, belonged to the estate of Isaac Meason deceased, and is, of course, liable for his debts. Now the doctrine of extinguishment cannot arise, as we must take the judgment to be valid, as above stated, either against them as executors, or against Isaac Meason in his individual character; and in either case the judgment is entitled to be paid out of the fund raised by the sale of property which belonged to Isaac Meason deceased, and by him devised to his son, as whose property it was sold by the sheriff. Order of the common pleas affirmed.

IV.—2 T

Hurst *v.* Meason.   The plaintiff, under this judgment, levied on the interest of the defendant in the bridge at Connelsville; and the question is, whether the proceeds are to be distributed as real or personal property.   The bridge was erected by virtue *of an* act entitled an act to authorize Isaac Meason and Zachariah Connel, their heirs and assigns, to erect, build· and maintain a toll-bridge across the Youghiogeny river, at Connelsville, in Fayette county.   It is admitted that the abutments of the bridge are built on the lands of Meason and Connel; who, by becoming joint owners, became the tenants in common of the property.   The act vests the property in Connel and Meason, their heirs and assigns; it would, therefore, seem to be regarded by the legislature as real estate : and it is doubtless competent for them to say whether it shall be real or personal estate.   And in the sixth section the grantees, their heirs and assigns, are enjoined, under a penalty, to keep the bridge in repair.   If a man erect a bridge on his own land, it is unquestionably real estate; and the only difference between that case and this is, that here the bridge is authorized by an act of assembly, because, being built over a public highway, the consent of the legislature must be obtained for the erection, and the tolls must be authorized and regulated by act of assembly.   The abutments are upon the land· of Meason and Connel, and I presume a grant of the land would carry the bridge as an incident or appurtenant; and this would hardly be doubted when, as may often be the case over a small stream, there is but a single arch.   But aside of this, I think it clear that it is real property. It may be included under the term tenement, if not land.   Tenement is a word of greater extent than land; and though in its vulgar sense, as Blackstone says, it is only applied to houses and other buildings, yet in its original, proper and legal sense, it signifies every thing that may be holden, provided it be of a permanent nature—whether it be of a substantial and sensible, or of an unsubstantial, ideal kind.   Thus, *liberum tenementum,* frank tenement or freehold, is applicable not only to lands and other solid objects, but also to offices, rents, commons and the like; and as lands and houses are *tenements,* so is an advowson a tenement; and a franchise, an office, a right of common, a peerage, or other property of the like unsubstantial kind, are all of them, legally speaking, tenements.   A rent, and a right of way, have also been held to be tenements.   2 *Ves. Jun.* 283.   A pew in a church was held to be real estate.   Bates *v.* Sparrell, 10 *Mass. Rep.* 323. In Buckridge *v.* Ingram, 2 *Ves. Jun.* 651, the shares in the navigation of the river Avon, under the statute of 10 *Anne,* were held to be real estate and subject to dower.   In Drybutter *v.* Bartholomew, 2 *P. Wms* 127, the shares of the New River Company are held to be real property.

In the case at bar it is not only a right arising out of the soil, but, so far as the abutments of the bridge are concerned, it is the soil itself.   In *Co. Litt.* 32, the cases in which a woman is endowable are enumerated, as a mill, a villain, the profit of stallage, a fair, the

[Meason's Estate.]

office of marshalsea, a dovehouse and a piscary.   Wherever a perpetual inheritance is granted, as here, which arises out of lands, or is in any degree connected with, or, as it is emphatically expressed by lord Coke, exercisable within it, it is that sort of property which the law denominates real property.

In Lord Stafford *v.* Buckley, 2 *Ves.* 170, Lord Hardwicke said, "an annuity in fee, granted out of the four and a half per cent duties upon goods exported from the West Indies, is a personal hereditament."   He was of opinion that it was a mere personal annuity, having no relation to lands or tenements, nor partaking of the nature of rent, which savours of the realty.   I think it plain that if it had savoured of the realty, the chancellor would have been of the opinion that it was a real and not a personal hereditament.   Order of the common pleas affirmed.

The next and last judgment in order, is the Bank of Pittsburgh *v.* Meason, which, it is understood, depends on the principles discussed in Hankins *v.* Meason.   Order discharging the rule reversed, and rule made absolute.

Some doubts exist in the minds of at least some of the court, whether the judgment creditors are entitled to more than simple interest on the original judgment, or whether they can count their interest on the judgments when revived.   It is therefore ordered that the judgments be calculated on the principle of simple interest, leaving the other question for future adjudication.

Decree accordingly.