Thurman, J.
The Ohio and Pennsylvania Railroad Company was-incorporated February 24,1848. 46 Ohio L. L. 261. The 5th section of its charter provides that the company “ shall have all the powers and privileges, and be subject to all the restrictions and provisions of the “ act regulating railroad companies,” passed February 11,1848. 46 Ohio L. 40. The third section of this latter act declares that the shares of stock in the companies that maybe subject-to its provisions, “ shall be regarded as personal property, and shall be subject to execution at law.” It is therefore manifest that the-petitioner is not entitled to dower in the 10 shares of the stock of The Ohio & Pennsylvania Railroad Company, for they are clearly personalty. But the question in respect to the stock in The Mans.field & .Sandusky City Railroad Company is not so easily disposed of. For that company is not, so far as the case shows, subject to-the provisions of said act of February 11,1848. It was previously ^chartered and organized, and that act does not interfere with companies created before its passage. Turning then to the charter of the company, we find in it no provision declaring whether its-stock is realty or personalty. We are thus brought to the genera1question, whether railroad shares in Ohio are, in the absence of *302 express legislative enactment, to be considered as real or personal ■estate. This question must be determined by a reference to the. principles of the common law and the general statutes of the state that have a bearing upon it. And its solution is not without difficulty ; for, as to the common law, the adjudicated cases are directly ■conflicting, and'when we resort to our statutes the chief aid we derive is from analogies and inferences.
In Drybutter v. Bartholomew, decided in 1723, 2 P. Wms. 127, the master of the rolls said that “ a fine may be, and usually is, levied of New River shares by the description of so much land covered with water,” but the case does not inform us what these shares were, nor how they were created; and whether they were real or personal estate was not discussed. They appear to have had their origin in the statutes of 3 James 1, chap. 18, and 4 James 1, chap. 12, to enable the mayor, commonalty, and citizens of London to supply the city with water; but these acts simply authorized the construction of the works and the acquisition of the necessary right of way. They created no stock, nor is any mention made in them of shares or shareholders. Yet it would seem, from the case cited as well as the case of Townshend v. Ash, decided in 1745, 3 Atb. 336, that shares were created, and hence these cases have been frequently cited as showing that stock in a water works company is real estate.
By a statute of 10 Anne, the mayor, aldermen, and common council of the city of Bath, their successors or asigns, or such persons as they should appoint, were authorized to improve the navigation of the river Avon, and to charge tolls on persons and property transported thereon. By an agreement executed between the corporate authorities of the one part, and the Duke of Beaufort and several other ^-persons on the other p>art, the duke and his associates undertook to do the work in consideration of being allowed to take the tolls. By the 11th article of the agreement it was provided that “ no survivorship shall at any time take place between the said parties and undertakers; but if any or either of them shall happen to die, the share or part of such so dying shall descend ,and go to the heirs and assigns of the party or parties so dying.”
In Buckeridge v. Ingram, decided in 1795, 2 Ves. Jr. 651, the question was directly made, whether these shares were personal or real estate, and it was decided that they were real estate and subject to dower. The master of the rolls held that the right to *303 take the tolls was an incorporeal hereditament arising out of realty, and was therefore a “ tenement.”
And he remarked: “ I have no difficulty in saying that wherever a perpetual inheritance is granted, which arises out of lands, or is in any way connected with, or, as it is emphatically expressed by Lord Coke, exercisable within it, it is that sort of property the law denominates real.”
The principle of these eases was followed, and possibly extended, by the supreme court of Connecticut, in 1818, in the case of Welles v. Cowles, 2 Conn. 567, in which it was held that shares of an incorporated turnpike company are real estate. The right to the tolls, said the court, “ is a right issuing out of real property, annexed to and exercisable within it; and comes within the description of an incorporeal hereditament of a real nature, on the same principle as a share in the New Oliver, in canal navigations and tolls of fairs and markets; ” citing Drybutter v. Bartholomew, 2 P. Wms. 127; Habergham v. Vincent, 2 Ves., 232, and The King v. The Inhabitants of Chipping Norton, 5 East, 239.
And in answer to the argument that the individual stockholders had only a claim on the company, and not upon the realty, and that this must be of a personal nature, the court said : “But the stockholders, as members of the company, are owners of the turnpike road; and it is in virtue of this interest that they have their claims for the dividends or their ^respective shares of the toll. It is not a mere claim on the corporation.”
This decision was recognized as law in 1822, in a suit between the same parties, 4 Conn. 182, though the question was not expressly made.
In 1835 the supreme court of Pennsylvania held that “ a toll bridge erected by two individuals across a river between their lands, by legislative authority is real estate.” The court said that the right was “ not only a right arising out of the soil, but, so far as the abutments of the bridge are concerned, it is the soil itself.” Hurst v. Meason, 4 Watts, 346. It is to be observed, however, that it does not appear that the builders were incorporated.
In Price v. Price’s Heirs, 6 Dana 107, the court of appeals of Kentucky, in 1838, held that the stock in the Lexington and Ohio Railroad Company is real estate. Without citing any adjudicated case, the court came to a conclusion which is thus expressed: “ The right conferi’ed on each shareholder is unquestionably an incorpo *304 real heriditament. It is a right of perpetual duration, and though it springs out of the use of personalty, as well as lands and houses, this matters not. It is a franchise which has ever been classed in that class of real estate denominated an incorporeal hereditament.”'
On the other hand, the supreme court of Massachusetts, in 1798, in Russell et al. v. Temple et al. 3 Dana’s Abr. 108, held that shares in incorporated bridge and canal companies are personalty. The case was between the widow and heirs of Thomas Russell, the-former contending that the shares were personal property, and that consequently she was entitled to a distributive portion of them, and the latter insisting that they were realty, and that, therefore, she-had but a dower estate. The question was very fully discussed, and was decided (says Professor G-reenleaf in his edition of Cruise),. “ upon great consideration.”
“For the heirs it was urged that these shares were real estate;.’ because, it was said, the estates were real in the corporations ; and 1 that if the estates in the corporations were *real, the estates-of the individual members in them followed their nature, and were-real; and that the. frequent declarations of the legislature declaring such shares personal estate, at least show a doubt that when one has a right to receive rent, he has only a right to receive a sum of money, yet it does not follow that his estate is not real estate-out of which his rent issues.”
■ For the widow it was argued that the shares were personalty,, because the estate [in the bridges, canals, towing-paths, wharves and lands], “ can only exist in the corporation which alone can acquire-it, aloné be seized or possessed of it, alone pass.it away, manage, or repair it, and so must hold it entire; and that the corporation is a moral person to all the purposes of property. Its tenure is to-their successors, orto their successors and assigns. The estates can never vest in or be divided among the individual members, to hold as tenants in common, etc., in their private capacities. Only the corporation can possess the estate, and that only by possessing the charter; and only the corporation can be taxed for it on common law principles; and on these can it alone be taken in execution for the debts of the corporation.”
“ That the share is personal estate though the corporation hold real estate; for the individual member has no estate, but only a right to such dividends as the corporation from time to time assigns to him. He is unknown in the grants made to it, and he can not *305 grant any part of the estate: nor can he be taxed for it but by statute law; nor can any private member of a corporation be dis-trained for a public concern of it ;-his only remedy for his dividend, is case in assumpsit, or an action on the case for a wrongful refusal, or neglect to pay, or allow him his part of the profits.”
The judgment of the court was, as I have stated, that the shares were per-sonal estate. “ The pxúncipal reason of the decision,” says Dana,11 appears to be, because the court considered that the individual member or shareholder had only a right of action for a sum of money, his pax*t of the net profits or dividends. And so the law has been held to be since this decision was made.”
*In his edition of Cruise, Greenleaf says: “Shares in the property of a corporation are real or personal property, according to the nature, object and manner of the investment. Where the corporate powex*s are to be exercised solely in land, as* where original axxthority is given by the charter to remove obstructions in a river and render it navigable, to open new channels, etc., to make a canal, erect water-works, and the like, as was the case of the New River water, the navigation of the river Avon and some othex*s and the property or interest in the land, though it be an incorporeal hereditament, is vested inalienably in the corporators themselves, the shares are deemed real estate. Such, in some of the United States, has been considered the nature of shares in toll bridge, canal and turnpike corporations by the common law; though latterly it has been thought that railway shares were more properly to be regarded as personal estate. But where the property originally entrusted is money, to be made profitable to the contributors by applying it to certain purposes, in the course of which it may be invested in lands or in personal property, and changed at pleasure, the capital fund is vested in the corporation, and the shares in the stock are deemed personal property, and as such are in all respects treated. In modern practice, however, shares in corporate stock, of whatever nature, are usually declared by statute to be personal estate.” 1 G-reenleaf’s Or. Dig. 39, 40.
In support of this statement, Mr. Greenleaf cites the eases we-have already noticed, and some others that require consideration. One of the most important of these is Bligh v. Bren, 2 Y. & C. Exch. 268, 294. It involved the question whether the shares in the Chelsea Water-works company were realty or personalty. The act of incorporation left the question open, as it contained no de *306 'duration upon the subject. The court reviewed the eases bearing •■upon it, and came to the conclusion that the shares were personalty. 'This decision was afterward, in 1838, spoken of with approbation in Bradley v. Holdsworth, 3 M. & W. 422.
*In the latter case the question was whether shares in the •‘‘London and Birmingham Railway” might be sold by a verbal contract. On the part of the defendant it was contended that they constituted an interest in land within the meaning of the statute of frauds, and that, therefore, a contract for their sale was void unless reduced to writing. The court held the contract valid. True, the act of incorporation declared that the shai*es should, to all intents .and purposes, be deemed personal estate and transmissible as such, and should not be of the same nature of real property; but it is •evident from what was said, that, independent of this provision, the same decision would have been made. Parke, B., said: “No ■doubt the company are seized of real property, as well as possessed ■of a great deal of personal property; but the interest of each individual shareholder is a share of the net produce of both, when ■brought into one fund." And again: “I have no doubt whatever that the shares of the proprietors, as individuals, are personalty; they consist of nothing more than a right to have a share of the net produce of all the property of the company.”
Alderson, B., said : “All the cases were under review in Bligh v. Brent, where the question was as to the shares in the Chelsea Waterworks company. That was a stronger case than the present, be- • cause there was no clause of this kind in the act of parliament, and yet the shares were held personal property.” “ I conceive that all ■the shareholders would take even without such a clause.”